PEOPLE v JAMES WILLIAMS

PEOPLE v MURRELL

PEOPLE v CADY

PEOPLE v OTTILLIA DAVIS

Docket Nos. 137599, 137600, 138208, 139133. Submitted June 3, 1992, at Grand Rapids. Decided November 3, 1992, at 9:00 A.M. Leave to appeal sought.

    James C. Williams was charged in the Kalamazoo Circuit Court with possession of less than twenty-five grams of a mixture containing cocaine. The court, William G. Schma, J., dismissed the charge on the basis of entrapment, finding that the sale of a substance containing trace amounts of cocaine by police officers posing as drug dealers on a public sidewalk was objectionable and reprehensible conduct that might have induced the defendant to buy the cocaine even if he had never intended to commit a crime. The prosecutor appealed.

    Shree R. Murrell was charged in the Kalamazoo Circuit Court with possession of less than twenty-five grams of a mixture containing cocaine. The court, John F. Foley, J., dismissed the charge on the basis of entrapment, finding that the police activity constituted entrapment because the controlled substances act does not authorize a police officer to sell cocaine to persons who are not authorized to possess the substance. The prosecutor appealed.

    Jan V. Cady was charged in the Kalamazoo Circuit Court with possession of less than twenty-five grams of a mixture containing cocaine. The court, Philip D. Schaefer, J., dismissed the charge on the basis of entrapment, finding that the police activity constituted entrapment because the officer was without lawful authority to sell cocaine to the defendant. The prosecutor appealed.

    Ottillia K. Davis was charged in the Kalamazoo Circuit Court with possession of less than twenty-five grams of a mixture containing cocaine. The court, Richard R. Lamb, J., dismissed

REFERENCES

Am Jur 2d, Criminal Law §§ 202-209.

See the ALR Index under Entrapment.

the charge on the basis of entrapment, finding that the police activity constituted entrapment because the practice amounted to a fishing expedition that was unrelated to the apprehension of specific targeted individuals. The prosecutor appealed.

The appeals were consolidated.

The Court of Appeals *held:*

1. Entrapment may be found either where the police engaged in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances or where the police engaged in conduct so reprehensible that it cannot be tolerated by a civilized society.

2. Because each of the defendants initiated contact with the police officers, who were merely standing on a street corner in an area identified with high illegal drug activity, there was no showing that the police engaged in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances. The fact that police officers posed as drug dealers in an area known for its illegal drug sales is insufficient by itself to show entrapment.

3. The sale of a controlled substance by a police officer in the course of the discharge of official duties, even if not specifically authorized by the provisions of the controlled substances act, is not conduct so reprehensible as to constitute entrapment per se.

4. Each of the trial judges erred in finding that the police officers' conduct in these cases constituted entrapment under either prong of the entrapment test.

Reversed.

CRIMINAL LAW — ENTRAPMENT — CONTROLLED SUBSTANCES.

Entrapment may be found either where the police engage in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances or where the police engage in conduct so reprehensible that it cannot be tolerated in a civilized society; the sale by police officers of a substance fashioned to appear to be a controlled substance and containing trace amounts of a controlled substance to persons who approach the officers while they are standing on a public sidewalk under circumstances where the officers make no overt gestures to induce anyone to approach them is neither impermissible conduct that would induce a law-abiding citizen to commit a crime nor conduct so reprehensible that it cannot be tolerated in a civilized society.

*Frank J. Kelley,* Attorney General, *Thomas L.*

*Casey,* Solicitor General, *James· J. Gregart,* Prosecuting Attorney, and *Michael H. Dzialowski,* Assistant Prosecuting Attorney, for the people.

*Milton J. Marovich, P.C.* (by *Milton J. Marovich*), for the defendants.

Before: HOLBROOK, JR., P.J., and BRENNAN and GRIFFIN, JJ.

PER CURIAM. In these cases consolidated on appeal, the four defendants were charged with possession of less than twenty-five grams of a mixture containing cocaine, MCL 333.7403(2)(a)(v); MSA 14.15(7403)(2)(a)(v). Each defendant was arrested in March of 1990 after purchasing cocaine from an undercover police officer who was posing as a drug dealer as part of a "reverse buy" operation conducted by the Kalamazoo Department of Public Safety. Each case was brought before a different Kalamazoo Circuit Court judge, and each judge dismissed the charge on the basis of entrapment. The prosecutor appeals as of right. We reverse.

I

The four cases were decided primarily on stipulated facts. The reverse buy operation began when the department purchased legally manufactured cocaine from a private laboratory. The department fashioned chunks of soap in a size and manner to resemble rocks of crack cocaine. The pieces of soap. were then laced with minute traces of cocaine, so that anyone attempting to smoke the "rock" would be unable to achieve a high from it. The amount of cocaine on the soap was enough to make it test positive for cocaine, but it would not allow the entire rock to burn. The department then packaged the pieces of soap into what is commonly

referred to as dime bags, which are bags of rocks of cocaine costing ten dollars.

Plain clothes police officers then took a number of individually manufactured dime bags and stood on a corner in an identified area of high drug activity. The undercover officers were instructed not to engage in any "initiating gestures" and to respond only to those subjects who initiated contact with them. When approached by people asking for crack cocaine, the officers sold the rocks to anyone requesting them. None of the defendants had been targeted as either drug dealers or users. After the sale, the officers signaled backup officers, who arrested the purchasers. The department videotaped the transactions. The entire operation resulted in the arrest of at least sixteen people.

II

In Docket No. 137599, defendant Williams stipulated that the sale took place after he first approached the undercover officer. Applying the entrapment test set forth in *People v Jamieson,* 436 Mich 61; 461 NW2d 884 (1990), the circuit court found that the police conduct was objectionable and reprehensible because the offer to sell was made in an uncontrollable public setting and the police were not selling what they purported to offer to sell. The court also found that the pharmaceutical companies were induced to manufacture and place into commerce an illegal substance. The court further found that any person of any age or condition could have been tempted to buy the cocaine. In the circuit court's opinion, there was no way of knowing whether, but for these transactions, defendant Williams may never have intended to commit the crime. The court could not assume that the general population was actively

seeking drugs to buy. The court determined that minimal restrictions had been placed on the officers' discretion, and there had been little control of their behavior. For these reasons, the circuit court concluded that the department's activity constituted entrapment.

In Docket No. 137600, defendant Murrell stipulated that the police officers were dressed as drug dealers, were standing and acting like drug dealers, and were portraying themselves as drug dealers. The circuit court ruled that the police activity constituted entrapment because the controlled substances act does not authorize a police officer to sell cocaine to persons who are not authorized to possess the substance.

In Docket No. 138208, defendant Cady testified that the undercover officer initiated contact with him. After reviewing the videotape of the transaction, the circuit court concluded that the undercover officer did nothing to invite the inquiry for the purchase. Nevertheless, the circuit court held that the department's conduct constituted entrapment for the reasons given in the case against defendant Murrell.

In Docket No. 139133, the circuit court found that the undercover officers merely stood on a street corner and did nothing to signal, induce, or entice the occupants of the vehicle in which defendant Davis was a passenger to approach the officers. The court found that Davis asked one officer if he had any crack cocaine. The court also found that the police did nothing to persuade or pressure Davis to purchase the particular package of cocaine. However, the circuit court concluded that the police activity constituted entrapment. The court stated that it had difficulty finding that it was the public policy of this state to allow government agents to utilize taxpayers' money to pur-

chase controlled substances and then transfer them to individuals where the police know that the recipient will become an offender subject to arrest, at the moment of transfer. The court decided that this practice was a fishing expedition unrelated to specific targets. Consequently, the circuit court dismissed the charges against Davis.

III

In *People v Fabiano,* 192 Mich App 523, 526; 482 NW2d 467 (1992), this Court held that the Supreme Court decision in *People v Juillet,* 439 Mich 34, 56-57; 475 NW2d 786 (1991), effectively changed the nature of the objective test for entrapment so that entrapment occurs if the police either engage in impermissible conduct that would induce a law-abiding person situated similarly to the defendant to commit the crime or engage in conduct so reprehensible that it cannot be tolerated by a civilized society. Entrapment exists if either prong of this test is met. *Id.* at 531. We continue to review a trial court's finding concerning entrapment under the clearly erroneous standard of review. *Id.* at 525; *Jamieson, supra* at 93.

Reviewing the issue under the first prong of this test, we analyze the following factors to determine whether the government activity would induce criminal conduct: (1) whether there existed any appeals to the defendant's sympathy as a friend; (2) whether the defendant had been known to commit the crime with which he was charged; (3) whether there were any long time lapses between the investigation and the arrest; (4) whether there existed any inducements that would make the commission of a crime unusually attractive to a hypothetical law-abiding citizen; (5) whether there were offers of excessive consideration or other

enticement; (6) whether there was a guarantee that the acts alleged as crimes were not illegal; (7) whether, and to what extent, any government pressure existed; (8) whether there existed sexual favors; (9) whether there were any threats of arrest; (10) whether there existed any government procedures that tended to escalate the criminal culpability of the defendant; (11) whether there was police control over any informant; and (12) whether the investigation is targeted. *Juillet, supra* at 56-57. We examine the facts to determine whether the government activity would induce a hypothetical person not ready and willing to commit the crime to engage in criminal activity. *Jamieson, supra* at 80.

In the present cases, many of these factors are inapplicable. In all the cases, there was no appeal to friendship or safety, threats of arrest, sexual favors, use of an informant, offers of excessive consideration, or government pressure. Moreover, each of the cocaine purchases was initiated by the individual defendants. The officers did not know any of the defendants before the transactions took place. In not one of the cases was a police officer found to have initiated contact or to have enticed or induced the cocaine purchases.

We acknowledge Chief Justice CAVANAGH's concurring opinion in *Jamieson, supra* at 96, n 1, that a plan to have undercover police agents pose as drug dealers and "offer to sell" drugs to individuals "randomly chosen" on the streets would raise serious entrapment problems. However, the undercover officers in this instance did not randomly seek out individuals, but merely stood on a street corner in an area identified with a high level of illegal drug activity. Furthermore, the police did not "offer" to sell drugs. Rather, the defendants sought out the officers, initiated contact with

them, and inquired whether the officers had any cocaine. Under these circumstances, we cannot classify the police conduct as a fishing expedition.

Thus, the police conduct consisted of nothing more than the presence on a public street of an undercover officer who, although posing as a drug dealer, did nothing to instigate or induce the purchase of drugs. The police did not manufacture any crime, but merely furnished an opportunity to commit a crime. Furnishing an opportunity to commit a crime does not constitute entrapment. *Juillet, supra* at 52-53; *Jamieson, supra* at 68. Moreover, entrapment does not occur merely because the undercover officers posed as drug dealers, because the mere fact of deceit will not bar prosecution. *Id.* In our opinion, the police conduct involved in this case would not induce a law-abiding person to commit the crime. *Fabiano, supra* at 526.

Turning to the second prong of the entrapment test, we reiterate that entrapment exists where "the police conduct is so reprehensible that we cannot tolerate the conduct and will bar prosecution on the basis of that conduct alone." *Fabiano, supra* at 531-532. We find that the police conduct in the cases at bar did not run afoul of the basic fairness required by due process. *Id.* at 532.

The purpose of the challenged police activity was the detection of crime, not its manufacture. Apart from furnishing an opportunity to commit a crime, the police did nothing improper. Moreover, the facts do not support the circuit court's suggestions that the police conduct aggravated the illegal use of drugs. The fact that the government supplied the cocaine is not reprehensible per se. *Jamieson, supra* at 88. Although the department utilized real cocaine in the operation, the record indicates that the police actually used soap chips

that were only dusted with cocaine. The amount was described as so small that it could not cause a high if ingested. Trained narcotics agents, not informants, participated in the operation. Furthermore, each transaction was videotaped, thereby enabling review of the police conduct. We conclude, therefore, that the circuit court clearly erred in each case in finding that the police conduct constituted entrapment. See *People v Griffin,* 187 Mich App 28; 466 NW2d 712 (1991); *People v Holst,* 186 Mich App 473; 465 NW2d 16 (1990).

IV

Next, we address the issue whether a finding of entrapment is required where the police sell cocaine to individuals not authorized to possess the drug. MCL 333.7304; MSA 14.15(7304) provides in pertinent part:

> (2) An official exempted from licensure by this section, when acting in the course of that person's official duties, may possess a controlled substance and may transfer a controlled substance to any other official who is exempted and who is acting in the course of that person's official duties.
>
> (3) An official exempted by this section may procure a controlled substance in the course of an administrative inspection or investigation or in the course of a criminal investigation involving the person from whom the substance was procured.

MCL 333.7531; MSA 14.15(7531) provides in pertinent part as follows:

> (3) A liability is not imposed by this article or (sic) an authorized state, county, or local officer, engaged in the lawful performance of the officer's duties.

In the cases involving defendants Murrell and Cady, the circuit court judges reasoned that although § 7304(3) permitted an officer in the course of an investigation to procure a controlled substance, nothing in the statute allowed an officer to "sell" the substance. Each judge held that § 7531(3) only relieved liability for officers engaged in lawful performance of their duties and that selling cocaine to unauthorized persons was outside the lawful performance of those duties. Each judge then concluded that the action of the police in selling the cocaine to unauthorized persons constituted entrapment.

We do not share the circuit court judges' understanding of these statutes. The fact that the government supplied actual cocaine does not require a finding of entrapment. *Jamieson, supra* at 86. That fact is only one factor relevant in the entrapment analysis. *Id.* at 88. In the context of the cases at hand, the use of undercover sales operations as a means by which to detect criminal activity is not indicative of entrapment per se. *Id.* at 83. Even if we were to decide that the cocaine-selling operation in this instance was improper under the cited statutes, the function of the entrapment defense is not to deter all police abuse against all persons in all situations, but to deter the manufacturing of crime. See *Juillet, supra* at 62, n 7. Again, the police did not manufacture a crime, but merely furnished a necessary element to the criminal transaction. Thus, we conclude that the circuit court judges further erred in deciding the entrapment issue solely on the basis of whether the challenged police activity was authorized under the controlled substances act.

Reversed.