PEOPLE v BUTLER

PEOPLE v STURGES

Docket Nos. 133727, 134559, 137727. Submitted November 10, 1992, at Detroit. Decided January 12, 1993; approved for publication April 27, 1993, at 9:05 A.M. Leave to appeal held in abeyance, 442 Mich —.

Lawrence Butler and Duane Sturges were each convicted by a jury in the Detroit Recorder's Court of conspiracy to possess between 225 and 650 grams of cocaine after the court, Robert L. Ziolkowski, J., conducted a hearing and rejected their claims of entrapment. Sturges received the mandatory minimum sentence of twenty to thirty years' imprisonment, and Butler received a sentence of ten to thirty years' imprisonment. The defendants appealed. The prosecution cross appealed, challenging the trial court's determination in Butler's case that there were substantial and compelling reasons to depart from the mandated sentence. The appeals were consolidated.

The Court of Appeals *held:*

Entrapment may be found where the police engage in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances or where the police engage in conduct so reprehensible that it cannot be tolerated regardless of whether the conduct caused the defendant to commit the crime.

In this case, where a police officer posed as a drug dealer willing to sell to any interested buyer and encouraged the defendants during several meetings and telephone calls to start a long and profitable drug-dealing relationship with him by buying an initial lot of 500 grams of cocaine, there was entrapment under both prongs of the entrapment test.

Reversed.

1. Criminal Law — Entrapment.

Entrapment may be found either where the police engage in impermissible conduct that would induce an otherwise law-

References

Am Jur 2d, Criminal Law §§ 205, 206.

See ALR Index under Entrapment.

abiding person to commit a crime in similar circumstances or where the police engage in conduct so reprehensible that it cannot be tolerated regardless of whether the conduct caused the defendant to commit the crime.

2. CRIMINAL LAW — ENTRAPMENT.

Factors to be considered in determining whether governmental activity would have induced a normally law-abiding person in circumstances similar to a defendant's to engage in criminal activity include: whether there existed any appeals to the defendant's sympathy as a friend; whether the defendant had been known to commit the same crime before; whether there were any long lapses of time between the investigation and the arrest; the existence of any inducements that would make the crime particularly attractive; offers of excessive consideration or other enticement; a guarantee that the acts alleged as crimes were not illegal; whether and to what extent any government pressure existed; the existence of sexual favors; whether there were any threats of arrest; the existence of any government procedures that tend to escalate the criminal culpability of the defendant; the police control over any informant; and whether the investigation was targeted.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Don W. Atkins,* Principal Attorney, Appeals, for the people.

*Milton R. Henry,* for Lawrence Butler.

State Appellate Defender (by *Charles J. Booker*), for Duane Sturges.

Before: SULLIVAN, P.J., and WAHLS and BRENNAN, JJ.

PER CURIAM. These appeals as of right have been consolidated. Defendants were each convicted by a jury of conspiracy to possess between 225 and 650 grams of cocaine, MCL 333.7403(2)(a)(ii); MSA 14.15(7403)(2)(a)(ii), MCL 750.157a; MSA 28.354(1). Defendant Sturges was sentenced to the manda-

tory minimum sentence of twenty to thirty years' imprisonment. The trial court, finding substantial and compelling reasons to depart from the mandate, sentenced defendant Butler to a term of ten to thirty years. This sentencing decision is the subject of the people's cross appeal. We find one issue to be dispositive and reverse defendants' convictions.

Defendants' prosecution was the result of a so-called "reverse buy" operation run jointly by the Highland Park Police Department and the Bureau of Alcohol, Tobacco, and Firearms. At an entrapment hearing held immediately before trial, special agent John Secretti of the ATF testified that in February 1990 he had sent word out on the streets that he had cocaine available for sale. Secretti had also made the number for his electronic beeper available. On February 20, 1990, Secretti received a page on his beeper from defendant Sturges. Secretti returned the call and spoke with Sturges. Secretti made it known to Sturges that he could provide cocaine. From February 26 through February 28, Secretti and Sturges made numerous telephone calls to each other. At one point, it appeared to Secretti that the proposed deal had fallen through, and Secretti told Sturges that, if he was ever interested in obtaining cocaine, he should call Secretti. According to Secretti, he was always friendly and jovial in his conversations with Sturges and wanted to convey the idea to Sturges that Sturges' business was important to him. Secretti testified that he told Sturges that he had put off other matters in order to accommodate Sturges' needs.[1] After the deal fell through, conversations

---

[1]

*Q.* [*Defense Counsel*]: All right, and during one conversation, you've also indicated to him that you were moving mountains for him; is that right?

regarding a deal resumed, apparently initiated by
Secretti.[2] At some point, Secretti invited Sturges to
come to his house for a beer.

A. [*Agent Secretti*]: I don't recall exactly what's on the tape.
It's possible I used that expression, though, yes, sir.

Q. And by that, you meant to convey to him the impression
that you were going to a great deal of trouble to try to obtain
drugs for him?

A. If I'm not mistaken, I would have to hear the tape again,
but it had something to do with the fact that I had other things
to do, I think, and that I was putting them out of the way to
take care of him.

Q. All right, and you wanted him to get the impression that
his business was very important to you; is that right?

A. That's correct.

Q. And you did that with the hope of inducing him or hoping
that he would continue to do business with you, is that right, or
to engage in contact with you; is that right?

A. That's a fair statement, yes, sir.

Q. [*Defense counsel*]: Agent Secretti, isn't it true that after
the—the deal had fell through, you called Duane to see if he
still was interested in purchasing the drugs?

A. [*Agent Secretti*]: I really don't remember. It's possible, but
I honestly don't remember, you know, if I called him, or if he
called me.

Q. But it's possible that you could have called him?

A. Yes, sir.

* * *

Q. At one point in time, Mr. Secretti, you had called Mr.—
this Duane and asked if the—he was ready to do the deal, and
he told you that the money man was trying to be located; is
that right?

A. That day of the arrest, I believe it was, yes, sir.

Q. And then you called him back and asked them had they
gotten the money together yet?

A. That's correct.

Q. Now, he hadn't called you or anything like that, had he?

A. If I'm not mistaken—

Q. I'm talking about the second time that you called him
back.

A. No, he had beaten me. I had called him. I think there was
a time it was supposed to be ready, and the the time had
passed, and I think that's when I called.

Secretti met with defendants on two occasions, February 26 and 28, 1990. On February 26, the three men met in a Highland Park parking lot. Sometime before this meeting, Secretti had telephoned defendant Butler and had been told by Butler that Sturges was trying to get some money together. The three talked about Sturges and Butler purchasing a kilogram of cocaine from Secretti, and one of the two defendants mentioned that Sturges and Butler were partners. Although the record is not clear on this point, the proposed deal apparently fell through sometime between the first and second meetings. Secretti called Sturges twice on February 28, telling him that he wanted to complete a deal that night, and that he wanted to start a long and profitable partnership. Sturges replied that he was trying to locate the "money man." A deal had been made for half a kilogram of cocaine. Another meeting was set up in the parking lot. At that meeting, Secretti met with defendants and Eric Ross, the money man, who showed Secretti several thousand dollars. Defendants were arrested by Highland Park police officers on Secretti's signal. At no point did Secretti possess drugs; apparently, the operation was intended to lead to a prosecution for conspiracy.

Neither defendant testified at the entrapment hearing. The trial court, applying the objective test for entrapment of *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973), held that defendants had not been entrapped. The trial court made few specific findings of fact, but did find that, had defendants been targeted by Secretti, it would have found the police conduct reprehensible. Nonetheless, the trial court found that no special relationship had been exploited, nor had any special inducements been offered to commit the offense of conspiracy.

In *People v Fabiano,* 192 Mich App 523; 482 NW2d 467 (1992), a panel of this Court held that the recent Supreme Court decision of *People v Juillet,* 439 Mich 34; 475 NW2d 786 (1991), had modified the objective test for entrapment in Michigan. The affirmative defense of entrapment is now to be analyzed according to a two-pronged test. Where the defense is asserted, a trial court must consider whether (1) the police engaged in impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances, or (2) the police engaged in conduct so reprehensible that it cannot be tolerated, irrespective of whether the conduct caused the defendant to commit the crime. *Fabiano, supra,* p 531. Entrapment exists if either prong is met. *Id.* We believe that defendants established by a preponderance of the evidence that both prongs were met.

With regard to the first prong, we will consider several factors to determine whether the governmental activity would have induced criminal conduct: (1) whether there existed any appeals to the defendant's sympathy as a friend; (2) whether the defendant had been known to commit the crime with which he was charged; (3) whether there were any long lapses of time between the investigation and the arrest; (4) the existence of any inducements that would make the crime particularly attractive; (5) offers of excessive consideration or other enticement; (6) a guarantee that the acts alleged as crimes were not illegal; (7) whether and to what extent any government pressure existed; (8) the existence of sexual favors; (9) whether there were any threats of arrest; (10) the existence of any government procedures that tend to escalate the criminal culpability of the defendant; (11) the police control over any informant; and (12)

whether the investigation was targeted. *Juillet, supra,* pp 56-57; *People v Williams,* 196 Mich App 656; 493 NW2d 507 (1992).

Several of these factors were present in this case. We believe that the government's methods can be characterized as a "fishing expedition." There is no indication in the record that the police had any knowledge that defendants were drug users or dealers; rather, Secretti put the word out to the public at large that he had drugs for sale. Fishing expeditions are generally condemned. See *People v Jamieson,* 436 Mich 61, 91; 461 NW2d 884 (1990); *Juillet, supra,* pp 67-68; *People v Duis,* 81 Mich App 698, 702-703; 265 NW2d 794 (1978). Unlike in *Williams, supra,* in this case, Secretti initiated some of the contacts with defendants, particularly the contact that led to the second meeting and defendants' arrests. Secretti also encouraged that a quick deal be done and held out the hope of a long and profitable relationship with defendants. Secretti, to some extent, also played on defendants' sympathy in his efforts to be congenial toward them and win their trust. *Juillet, supra,* p 65.

We also believe that the government's conduct runs afoul of the second prong. While police-sponsored drug sales are not reprehensible per se, *Jamieson, supra,* p 88, we believe that such actions should be subjected to greater scrutiny than police purchases. *Jamieson, supra,* p 96, n 1 (CAVANAGH, J., concurring). Secretti's act of making his beeper number known and his apparent willingness to sell drugs where parts of an effort to "test the virtue" of a wide range of targets. *Juillet, supra,* p 78 (CAVANAGH, C.J., concurring). Moreover, we believe that Secretti's act of making contact with defendants to propose the quick completion of a deal after the first deal had fallen through, com-

bined with his stated hope of a long and profitable relationship, goes beyond the limit of acceptable conduct in ensnaring a defendant. *Fabiano, supra,* p 532.

We conclude that defendants were entrapped as a matter of law. Although the trial court's opinion was reached without the benefit of *Juillet* and *Fabiano,* we see no reason to remand this case for reassessment by the trial court. The burden of proving entrapment was on defendants. Because we have accepted as true the testimony of the government's agent, no determinations by the trial court regarding the witnesses' credibility are necessary.

Reversed.