PEOPLE v CONNOLLY

Docket No. 203967. Submitted September 9, 1998, at Detroit. Decided November 3, 1998, at 9:00 A.M. Leave to appeal sought.

William Connolly and Ross W. Thibaudeau were each charged in the Detroit Recorder's Court with one count of conspiracy to possess with intent to deliver marijuana, and Connolly was additionally charged with possession of a firearm during the commission of a felony. An undercover police officer, after being introduced by an informant to Thibaudeau as a seller of marijuana, twice gave Thibaudeau handful samples from a bale of marijuana to enable Thibaudeau to look for someone willing to buy the whole bale. Connolly emerged as a willing buyer. The court, Kirsten Frank Kelly, J., on motions by the defendants, dismissed the charges, ruling that the defendants had been entrapped because the undercover police officer engaged in conduct so reprehensible that it cannot be tolerated when he gave the marijuana samples to Thibaudeau without retaining control over what Thibaudeau could do with them. The prosecution appealed.

The Court of Appeals held:

Entrapment will be found where the police engage in impermissible conduct that would induce a law-abiding person to commit a crime or where the police engage in conduct so reprehensible that it cannot be tolerated. Reprehensible and intolerable conduct by the police includes commission by the police of criminal, dangerous, or immoral acts in an effort to furnish a target with the opportunity to commit an offense. In this case, the trial court clearly erred in finding entrapment. Giving two small samples from a nearly fifty-pound bale of marijuana to a suspected drug trafficker in order for him to find potential buyers does not constitute reprehensible conduct by the police.

Reversed and remanded.

CRIMINAL LAW — ENTRAPMENT.

Entrapment will be found where the police engage in impermissible conduct that would induce a law-abiding person to commit a crime

or where the police engage in conduct so reprehensible that it cannot be tolerated; reprehensible and intolerable conduct by the police includes the commission by the police of criminal, dangerous, or immoral acts in an effort to furnish a target with the opportunity to commit an offense.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Don W. Atkins*, Assistant Prosecuting Attorney, for the people.

*David A. Goldenberg, P.C.* (by *David A. Goldenberg*), for William Connolly.

*Becker & Associates* (by *William Hill*), for Ross W. Thibaudeau.

Before: GAGE, P.J., and KELLY and HOEKSTRA, JJ.

KELLY, J. The prosecution appeals as of right from orders granting motions by defendants William Connolly and Ross W. Thibaudeau to dismiss the charges against them on the basis of a finding of entrapment. The charges had been conspiracy to possess with intent to deliver marijuana against both defendants. Connolly additionally had been charged with possession of a firearm during the commission of a felony. We reverse and remand.

BACKGROUND

In May of 1996, Officer Corey Williams of the Livonia Police Department arrested Walter Short and his wife. During a subsequent interview, Short informed Williams of certain persons involved in the trafficking of narcotics. Because Short agreed to cooperate with

Williams and give him the names of these persons, he was not charged with a crime. Approximately two weeks after the interview, Short contacted Williams and informed him that defendant Thibaudeau was interested in purchasing marijuana.

On June 19, 1996, Williams instructed Short to call Thibaudeau and inform him that Short knew someone who had marijuana to sell. Thibaudeau did not answer the phone. Short left a message that he should contact him about what they had previously talked about. On June 24, 1996, Williams again instructed Short to contact Thibaudeau by telephone. Short told Williams that he would use the word "machines" in place of marijuana during the conversation. Thibaudeau stated that he was interested and wanted to meet with Short to discuss the transaction. On June 26, 1996, Short called Thibaudeau again to confirm the meeting and told him that he would bring a sample of the forty-nine pounds of the marijuana so that Thibaudeau could "shop it around."

On June 27, 1996, Short called Thibaudeau to tell him that he wanted to bring the sample to Thibaudeau's home. He agreed, but was not there when Williams and Short arrived at the address. On July 9, 1996, Williams and Short went to Thibaudeau's home to deliver the sample. Williams let Thibaudeau see the forty-nine pounds of marijuana and cut off a corner of the bale to let Thibaudeau shop it around to potential financiers of the deal. After this meeting, Williams began dealing directly with Thibaudeau.

On July 10, 1996, Thibaudeau paged Williams. Williams returned the page and was informed that

Thibaudeau had a friend, Bill,[1] who was interested in the entire forty-nine pounds of marijuana. Later that day, Williams and Thibaudeau met to discuss the terms of the sale. Thibaudeau stated that he needed another sample to show Bill because he had smoked the first sample. In the evening of the same day, Williams and Thibaudeau met at a local restaurant where Williams gave Thibaudeau another sample of the marijuana.

On July 11, 1996, Thibaudeau called Williams to inform him that Connolly was at his home with the money for the transaction. Williams called Short to inform him that he was going to Thibaudeau's home. Short then went to Thibaudeau's home to confirm that the money was there. Short called Williams to tell him the deal was in place. The defendants were then arrested by the Livonia police.

At the evidentiary hearing, the trial court concluded that the police conducted a "fishing expedition" with the forty-nine pounds of marijuana. The trial court found that the police manufactured the crime and "aggravated the illegal use of drugs" when Williams gave Thibaudeau two samples of marijuana without exercising control over the narcotics. As a result, the trial court ruled that defendants had been entrapped by reprehensible police conduct that society could not tolerate. The trial court granted defendants' motions to dismiss.

---

[1] This person, also known as "Wild Bill," turned out to be defendant Connolly.

THE ISSUE OF ENTRAPMENT

The prosecution argues that the trial court erred in concluding that defendants were entrapped because the police conduct in this case was not so reprehensible as to constitute entrapment. We agree. This Court reviews a trial court's finding concerning entrapment under the "clearly erroneous" standard. *People v Williams*, 196 Mich App 656, 661; 493 NW2d 507 (1992). The trial court's findings are clearly erroneous if, after review of the record, this Court is left with a firm conviction that a mistake has been made. *People v Launsburry*, 217 Mich App 358, 362; 551 NW2d 460 (1996).

Entrapment is analyzed according to a two-pronged test, with entrapment existing if either prong is met. *People v Ealy*, 222 Mich App 508, 510; 564 NW2d 168 (1997). The trial court must consider whether (1) the police engaged in impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances, or (2) the police engaged in conduct so reprehensible that it cannot be tolerated. *Id.* Defendants concede that they were not entrapped under the first prong of the entrapment test, specifically arguing that they were entrapped under the second prong of the test because of reprehensible police conduct.

Under the second prong of the test, entrapment exists where "the police conduct is so reprehensible that we cannot tolerate the conduct and will bar prosecution on the basis of that conduct alone." *Williams, supra* at 663. Entrapment could also occur under the second prong of the entrapment test if the furnishing

of the opportunity for a target to commit an offense "requires the police to commit certain criminal, dangerous, or immoral acts." *People v Jamieson*, 436 Mich 61, 95-96; 461 NW2d 884 (1990) (CAVANAGH, J., concurring).

The prosecution is correct in its assertion that undercover drug sales conducted by the police do not constitute entrapment per se. *People v Butler*, 444 Mich 965, 966 (1994). However, the trial court did not rely on the "reverse buy" situation alone in its findings. The prosecution is also correct in its assertion that *People v Butler*, 199 Mich App 474; 502 NW2d 333 (1993), was reversed by the Michigan Supreme Court. 444 Mich 965. Yet, the trial court did not state that it was relying on this Court's decision in *Butler, supra*, but simply stated that, of the narcotics entrapment cases, the facts in *Butler, supra*, were the "most closely analogous."

In the instant case, defendants were not immediately arrested after defendant Thibaudeau received marijuana from Officer Williams. Walter Short, Officer Williams' informant, offered the sample in one of the telephone conversations between Short and defendant Thibaudeau. In addition, Officer Williams was persuaded to give defendant Thibaudeau a second sample to show to his buyer/money man, defendant Connolly, because defendant Thibaudeau said he had smoked the first one. Defendants alleged, and the trial court agreed, that this type of police conduct of placing controlled substances in the societal stream is highly reprehensible and cannot be tolerated. In *Peo-*

.  *ple v Forrest*, 159 Mich App 329, 336; 406 NW2d 290 (1987),  we noted that

> [w]e recognize that some jurisdictions have held that the government's conduct in providing drugs is "reprehensible." However, we refuse to adopt a similar per se rule. Such a rule would inhibit otherwise legitimate law enforcement techniques which are oftentimes the only way the police can obtain evidence in drug-related offenses.

We also accept the prosecutor's argument that a law enforcement officer may distribute controlled substances to another person as a means of detecting criminal activity. MCL 333.7304(4); MSA 14.15(7304) (4).[2] Further, we do not believe that giving two small samples from a nearly fifty-pound bale of marijuana to suspected drug traffickers in order for them to find potential buyers amounts to intolerable reprehensible

---

[2] MCL 333.7304; MSA 14.15(7304) reads in relevant part:

(1) The requirement of licensure is waived for the following persons in the circumstances described in this section:

*      *      *

(e) An officer or employee of this state, or a political subdivision or agency of this state who is engaged in the enforcement of a state or local law relating to controlled substances and who is authorized to possess controlled substances in the course of that person's official duties.

*      *      *

(4) a law enforcement officer exempted by this section may distribute a controlled substance to another person in the course of that officer's duties as a means to detect criminal activity or to conduct a criminal investigation.

Paragraph 4 was added by amendment in 1994. 1994 PA 221, § 1. This appears to be the result of a codification of this Court's decision in *Williams, supra.*

conduct. To do otherwise would give drug traffickers an unfair advantage when the police engage in a "reverse buy" situation. In other words, by affirming the decision of the trial court, we would be encouraging drug dealers to insist on samples when buying narcotics in order to avoid the consequences of dealing with undercover police officers or agents.

We are not persuaded by defendants' argument that the police failed to exercise control over the samples and thus acted in an intolerable fashion. Had the police engaged in the distribution of a substantial quantity of the marijuana intended as bait in the sting operation, we would be inclined to say the police intended "to commit certain criminal, dangerous, or immoral acts," which could not be tolerated. *Jamieson, supra* at 95-96 (CAVANAGH, J., concurring). However, because the quantities involved in this case were of such a small amount[3] and the samples were intended to be used in the routine technique of shopping the drugs around to potential drug traffickers, we will not characterize such activity as intolerably reprehensible police conduct. As such, this Court is left with a firm conviction that a mistake has been made.

Reversed and remanded.

---

[3] The parties described the samples as consisting of handful amounts cut from the corner of the bale of marijuana.