*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BRIAN STEPKA,

Defendant-Appellant.

UNPUBLISHED
October 28, 2024
11:57 AM

No. 365588
Van Buren Circuit Court
LC No. 2022-023804-FH

Before: BORRELLO, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

This case is before us on remand from our Supreme Court to consider as on leave granted. *People v Stepka*, 513 Mich 922 (2023). Defendant appeals his plea-based conviction of child sexually abusive activity (CSAA), MCL 750.145c(2)(a), arguing that he was entrapped by a bait-and-switch sex sting. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case involves an undercover operation conducted in April 2022 by the Van Buren County Sheriff's Department and Genesee County Sheriff's Department using an Amsterdam-based website called "Skip the Games." There was testimony at the evidentiary hearing describing the website as an "escort service" for adults. The website indicated that it prohibited minors and that a person must be at least 19 years old to post on the site, but there was no age-verification process.

Deputies posted an advertisement on Skip the Games. The advertisement was created to appear to depict a 20-year-old "female escort," and it listed various sexual activities that "this service provider may enjoy." Additionally, the advertisement included photographs of an undercover officer who was actually 18 or 19 years old, as well as a photograph that stated "I [heart] DILFs," which stands for "dad's I'd like to F." Certain deputies were located in a hotel

-1-

room and posed as the escort to answer inquiries responding to the advertisement. Defendant engaged in the following text message conversation with the deputies posing as the escort:[1]

[*Decoy*]: What up?

[*Decoy*]: U just called me.

[*Defendant*]: Hello I see your post on STG I am Brian and I would very much like to meet you

[*Decoy*]: Nice.

[*Decoy*]: I'm in pawpaw

[*Decoy*]: Where r u?

[*Defendant*]: I am in covert right now I am a Snapon tool guy so I am all over in a day but I can head that way shortly

[*Decoy*]: Are you OK with younger chicks?

[*Defendant*]: Yeah as long as your 18 or 19 are you ok with older guys I am 46

[*Defendant*]: ???

[*Decoy*]: Sorry I'm 15

[*Defendant*]: Where are you located and what are you looking for

[*Decoy*]: I'm in Paw Paw

[*Decoy*]: Paw Paw

[*Defendant*]: Yes where in Paw Paw

[*Decoy*]: I'm looking to f*** and suck for $80?

---

[1] Detective Sergeant Kyle Romeo, with the Van Buren County Sheriff's Department, testified at the evidentiary hearing that defendant was not a target for law enforcement until he responded to the advertisement. Before defendant responded to the advertisement, Romeo did not know of defendant and did not know anything about him.

[*Defendant*]:  Ok

[*Defendant*]:  I am up for it

[*Decoy*]:  Nice!

[*Decoy*]:  Ur cool with me being 15?  I just don't want any surprises or any trouble

[*Defendant*]:  Ur cool with right?  And I assure you I am no trouble

[*Decoy*]:  I'm at the comfort inn

[*Decoy*]:  Ok good

[*Decoy*]:  I am totally down!

[*Decoy*]:  When r u coming?

[*Defendant*]:  Do you know the address so I can see how far it is

[*Decoy*]:  Hang on

[*Decoy*]:  Looks like its 153 ampey road

[*Defendant*]:  Can we do a confirmation pic?

[*Decoy*]:  It's like right by the expressway

[*Decoy*]:  [Sent a photograph that is hard to see]

[*Defendant*]:  Something not from your profile

[*Defendant*]:  [Sent a photograph that is hard to see]

[*Decoy*]:  Ok hang on

[*Decoy*]:  [Sent a photograph that is hard to see]

[*Defendant*]:  Ok it will take me 40 min to get there

-3-

[*Defendant*]:  I will let you know when I am headed that way

[*Decoy*]:  Sweet

[*Defendant*]:  Is there anyone there with you

[*Decoy*]:  Sorry the note was backwards in the mirror lol

[*Defendant*]:  Try again lol

[*Decoy*]:  Nope by my self

[*Decoy*]:  My cousin went to Chicago for a wedding til tomorrow

[*Decoy*]:  But she don't care anyhow

[*Defendant*]:  You have anything leather or leather like you can wear?

[*Decoy*]:  Try again?

[*Defendant*]:  With the note lol

[*Defendant*]:  You said it was backwards

[*Decoy*]:  Yea cuz of the mirror

[*Decoy*]:  I don't have leather

[*Defendant*]:  [sent emoji]

[*Decoy*]:  Sorry

[*Defendant*]:  [sent emoji]

[*Decoy*]:  I will make it up to you I promise lol

[*Defendant*]:  You done this before?

[*Decoy*]:  Do you wanna f*** and a bj?

[*Decoy*]:  A couple times

[*Defendant*]:  Yes

-4-

[*Decoy*]:  But I do luv to get f\*\*\*ed lol

[*Defendant*]:  Can you send me a xxx pic so I know I am not getting set up

[*Defendant*]:  I will send you one

[*Decoy*]:  Nope

[*Decoy*]:  I'm not sending nudes or my face

[*Decoy*]:  I'm not getting busted

[*Defendant*]:  I understand I don't want to get busted either

[*Decoy*]:  I just want no drama f\*\*\*

[*Defendant*]:  Ok

[*Decoy*]:  Are you cool with younger?

[*Defendant*]:  Yeah

[*Defendant*]:  Just nervous

[*Decoy*]:  Ok well let me know

[*Decoy*]:  I won't bite lol

[*Defendant*]:  Lol I just can't get busted

[*Decoy*]:  F\*\*\* me neither!

[*Defendant*]:  Do you have a rain coat?

[*Decoy*]:  Like condom or actual raincoat?

[*Decoy*]:  ?

[*Defendant*]:  Sorry with a customer yes a condom I am clean but

[*Decoy*]:  I do lol

[*Decoy*]:  Yes I have them

[*Defendant*]:  K

[*Decoy*]:  And I am super clean

[*Decoy*]:  When you asked about the leather and then a raincoat I wasn't sure lol

[*Defendant*]:  Lol yeah I see how that would confuse someone

[*Decoy*]:  IKR

[*Decoy*]:  I was like what???

[*Decoy*]:  He gonna ask me for what next lol

[*Defendant*]:  I really wish you had leather that is my fetish

[*Defendant*]:  You seem mature for your age

[*Decoy*]:  Sorry no leather

[*Decoy*]:  I been on my own for a while

[*Decoy*]:  Long story

[*Defendant*]:  Are you shaved I love that

[*Decoy*]:  Yup

[*Decoy*]:  Completely

[*Decoy*]:  Lol

[*Defendant*]:  Me too

[*Decoy*]:  Nice

[*Decoy*]:  Most guys are not

[*Defendant*]:  That has to be not nice

[*Decoy*]:  Well shaved seems cleaner

[*Defendant*]:  Yes I agree

[*Decoy*]:  U coming here?

[*Defendant*]:  Yes just at my last stop then headed to you

[*Defendant*]: Getting something to drink want anything

[*Decoy*]: For sure

[*Decoy*]: Like wine or something?

[*Decoy*]: Like a wine cooler

[*Defendant*]: I got a mtn dew

[*Decoy*]: If they don't have wine cooler orange pop is cool

[*Defendant*]: Do you smoke?

[*Decoy*]: Yes u do!

[*Defendant*]: No

[*Defendant*]: What room number are you in

[*Decoy*]: [Sent a photograph that is hard to see but presumably contains marijuana]

[*Decoy*]: Oh room number . . . 157

[*Decoy*]: Lol

[*Decoy*]: I don't smoke cigarettes

[*Decoy*]: But I do have that little bit of weed if u want some

[*Defendant*]: OK that's what I was asking I don't smoke anything

[*Decoy*]: Ok no problem

[*Decoy*]: I did not some today. I don't really like it

[*Decoy*]: That we'd in my cousins but she don't care

[*Decoy*]: Weed

[*Decoy*]: I don't like cigarettes at all

> [*Defendant*]: Me neither can't stand the smell
>
> [*Decoy*]: IKR
>
> [*Defendant*]: What are you wearing
>
> [*Decoy*]: Leopard print bra and like pinkish panties
>
> [*Decoy*]: Is thong panties
>
> [*Decoy*]: Wya
>
> [*Defendant*]: Close
>
> [*Decoy*]: Ok cool
>
> [*Defendant*]: Pic of bra and panties to prove not law enforcement
>
> [*Decoy*]: Ok hang on
>
> [*Decoy*]: [Sent a photograph appearing to be in underwear]
>
> [*Defendant*]: [thumbs up emoji]
>
> [*Decoy*]: U like? Lol

Defendant was arrested after he arrived at the hotel.

Defendant was charged with (1) one count of CSAA, MCL 750.145c(2)(a); (2) two counts of using a computer to commit a crime, MCL 752.796; and (3) one count of accosting a child for immoral purposes, MCL 750.145a. He moved to dismiss the charges on the ground of entrapment.

Following an evidentiary hearing, the trial court issued a written opinion and order denying defendant's motion. The court found that defendant did not establish that he was entrapped because the "police did not engage in conduct that would impermissibly induce a person similarly situated to the defendant, though otherwise law-abiding, to commit the crime," and "[f]urthermore, the police conduct at issue was not so reprehensible that it cannot be tolerated regardless of its relationship to the crime." Essential to both of these conclusions, was the trial court's finding that the police merely provided the opportunity for defendant to commit criminal acts involving arranging to meet a 15-year-old minor for paid sexual activity and defendant willingly seized that opportunity.

## II. STANDARD OF REVIEW

When reviewing a trial court's entrapment ruling, the court's factual findings are reviewed for clear error, questions of law are reviewed de novo, and the trial court's ultimate ruling on the issue of entrapment is reviewed for clear error. *People v Jade*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365951); slip op at ___. In describing the appellate review afforded to the trial court's ruling on entrapment, our Supreme Court has stated:

> A trial court's finding of entrapment is reviewed for clear error. Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made. A defendant has the burden of establishing by a preponderance of the evidence that he was entrapped. [*People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002) (citations omitted).]

## III. ANALYSIS

Defendant argues that his conviction should be vacated because he was entrapped. According to defendant, the law enforcement officers' conduct constituted impermissible inducement because it would have induced a similarly situated person to commit the crime. Defendant argues in support of this contention that the advertisement depicted an adult woman and was posted on a website for adults. Defendant further argues that the decoy initiated the conversation about exchanging money for sexual acts and pressured defendant to go through with the meeting. He contends that the decoy improperly escalated his criminal liability by a significant amount.

Defendant further argues that the law enforcement officers engaged in reprehensible conduct that should not be tolerated because they generally targeted people who were soliciting adult escorts and then "duped" defendant into committing far more serious crimes involving the solicitation of sexual acts from a minor in exchange for money. Defendant maintains that he did not set out with the intention of soliciting minors for sex. Defendant claims that the law enforcement officers manufactured crimes that otherwise would not have ever occurred, improperly escalating the nature of the offense without a legitimate investigatory purpose or any reason to believe defendant was inclined to commit more serious crimes involving minors.

In Michigan, entrapment is defined by a "modified objective test." *Johnson*, 466 Mich at 508. "Under the current entrapment test in Michigan, a defendant is considered entrapped if either (1) the police engaged in impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances or (2) the police engaged in conduct so reprehensible that it cannot be tolerated." *Id*. at 498. However, there is no entrapment if "law enforcement officials present nothing more than an opportunity to commit the crime." *Id*.

"The purpose of the entrapment doctrine is to deter unlawful government activities and to preclude the implication of judicial approval of impermissible government conduct." *People v D'Angelo*, 401 Mich 167, 173; 257 NW2d 655 (1977). It is the defendant's burden to establish entrapment by a preponderance of the evidence. *Id*. at 183. According to our Supreme Court, the

> focus of the entrapment inquiry under the objective test is upon the nature of the police conduct. The guilt or innocence of the defendant is irrelevant to that determination. A decision whether entrapment has occurred will involve the

court's evaluation of the government conduct which resulted in the charges against the defendant. [*Id*. at 176.]

## A.  INDUCEMENT

Beginning with the inducement prong, entrapment may be found if "the police engaged in impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances." *Johnson*, 466 Mich at 498.

> When examining whether governmental activity would impermissibly induce criminal conduct, several factors are considered: (1) whether there existed appeals to the defendant's sympathy as a friend, (2) whether the defendant had been known to commit the crime with which he was charged, (3) whether there were any long time lapses between the investigation and the arrest, (4) whether there existed any inducements that would make the commission of a crime unusually attractive to a hypothetical law-abiding citizen, (5) whether there were offers of excessive consideration or other enticement, (6) whether there was a guarantee that the acts alleged as crimes were not illegal, (7) whether, and to what extent, any government pressure existed, (8) whether there existed sexual favors, (9) whether there were any threats of arrest, (10) whether there existed any government procedures that tended to escalate the criminal culpability of the defendant, (11) whether there was police control over any informant, and (12) whether the investigation was targeted. [*Id*. at 498-499.]

The trial court in this case made findings for each of the above 12 factors.  The court found that factors 1, 3, 4, 5, 6, 7, 8, 9, 11, and 12 did not weigh in favor of finding that entrapment occurred.  Specifically, the trial court found that there was no evidence of appeals to defendant's sympathy as a friend, that there was no meaningful delay between the investigation and arrest, that there were no inducements that would make committing the offense unusually attractive to an otherwise law-abiding citizen in defendant's situation, that there was no evidence of material excessive consideration, that the government did not make any representations that defendant's acts were legal, that defendant was at all times free to discontinue the interaction and was not pressured by law enforcement to engage in the meeting, that defendant was not threatened with arrest before commission of the charged acts, and that there was no evidence of reliance on an informant.  The trial court also found that "[w]hile the criminal conduct at issue in this case is itself sexual in nature, there is no evidence defendant was promised separate sexual favors in exchange for engaging in the charged crimes."

Furthermore, the trial court found that the investigation was not targeted at any particular individual, which weighed against a finding of entrapment because the use of untargeted reverse sting operations has been approved by our Supreme Court in *People v Butler*, 444 Mich 965, 966; 512 NW2d 583 (1994), and this Court in *People v Williams*, 196 Mich App 656; 493 NW2d 507 (1992), on the ground that such tactics merely present individuals with the opportunity to commit a crime.

The trial court initially found that the second factor weighed in favor of finding entrapment because there was no evidence that defendant was known to commit the charged crimes and that

the tenth factor weighed in favor of finding entrapment because there was evidence that the law enforcement officers took steps to escalate the seriousness of defendant's criminal actions. However, the trial court reasoned further that the totality of the circumstances weighed against finding that those two isolated factors established that defendant may have been impermissibly induced to engage in criminal conduct. The court found that despite defendant's lack of similar criminal history, the text message conversation "reveal[ed] an evident desire and willingness to have sex with someone who represented that she was underage" and that any hesitation expressed by defendant was based only on a fear of getting caught and not on a concern over the wrongfulness of the conduct. Regarding escalation, the trial court found that the undercover decoy merely presented defendant with the opportunity to arrange for paid sexual activity with a minor and that defendant readily seized this opportunity, which weighed against finding that entrapment occurred. The court concluded that law enforcement "did not engage in conduct that would impermissibly induce a person similarly situated to the defendant, though otherwise law-abiding, to commit the crime."

The trial court relied heavily on *Butler* and *Williams*. In *People v Butler*, 199 Mich App 474, 476; 502 NW2d 333 (1993), rev'd 444 Mich 965 (1994), law enforcement officers conducted a "reverse buy" operation in which an undercover officer "sent word out on the streets that he had cocaine available for sale," and made his electronic beeper number available. The defendant contacted the undercover agent, and he was eventually arrested after presenting several thousand dollars in exchange for half a kilogram of cocaine. *Id*. at 476-478. This Court determined that the defendant was entrapped. *Id*. at 481. However, the Michigan Supreme Court reversed this Court's judgment, reasoning as follows:

> We agree with the trial court's determination that the reverse-buy operation conducted by law enforcement officials in this case did not constitute entrapment. This Court has previously held that undercover drug sales operations conducted by government officials are not indicative of entrapment per se. Further, as found by the trial court, nothing in the conduct of the government in this particular case rose to the level of entrapment. *Law enforcement officials did nothing more than to present defendants with the opportunity to commit the crimes of which they were convicted*. [*Butler*, 444 Mich at 965-966 (citation omitted; emphasis added).]

In *Williams*, 196 Mich App at 658-659, undercover officers posed as drug dealers and sold pieces of soap made to look like rocks of crack cocaine and laced with small amounts of cocaine to people who approached them "on a corner in an identified area of high drug activity." This Court concluded that such activity did not constitute entrapment, reasoning in relevant part as follows:

> Furthermore, the police did not "offer" to sell drugs. Rather, the defendants sought out the officers, initiated contact with them, and inquired whether the officers had any cocaine. Under these circumstances, we cannot classify the police conduct as a fishing expedition.
>
> Thus, the police conduct consisted of nothing more than the presence on a public street of an undercover officer who, although posing as a drug dealer, did

nothing to instigate or induce the purchase of drugs. The police did not manufacture any crime, but merely furnished an opportunity to commit a crime. Furnishing an opportunity to commit a crime does not constitute entrapment. Moreover, entrapment does not occur merely because the undercover officers posed as drug dealers, because the mere fact of deceit will not bar prosecution. In our opinion, the police conduct involved in this case would not induce a law-abiding person to commit the crime. [*Id*. at 662-663 (citations omitted).]

Here, law enforcement also merely presented defendant with the opportunity to commit the crime of which he was convicted. Law enforcement posed as a 15-year-old who was offering sexual acts in exchange for money, posted an advertisement on an adult-oriented website, and initially claimed to be old enough to post on the site. After defendant responded to the advertisement, defendant was clearly informed that the decoy was actually 15 years old. Thus, defendant was presented with an opportunity to either proceed with committing the relevant criminal acts or decline. Merely presenting an opportunity to commit a crime is not entrapment. *Johnson*, 466 Mich at 498; see also *Butler*, 444 Mich at 965-966; *Williams*, 196 Mich App at 662-663.

Defendant argues that he was nonetheless entrapped because the government impermissibly induced him to commit the crime at issue by significantly escalating the situation from one involving soliciting an adult escort to the serious felonious conduct involving solicitation of a child. Defendant relies heavily on *People v Killian*, 117 Mich App 220; 323 NW2d 660 (1982), to support this argument.

The circumstances in *Killian* also involved an undercover law enforcement drug sale operation. *Id*. at 222. This Court stated in relevant part as follows:

The most troubling aspect of the activities of the police in this case is the escalation of defendant's criminal culpability. The police knew that defendant used both marijuana and cocaine and that he had offered to sell marijuana to an acquaintance who was a police officer. Although there was testimony that defendant had given a very small amount of cocaine to a friend, the police had good reason to believe that defendant was not involved in cocaine sales. Police were not gathering evidence of crimes which they had any reason to suspect defendant had committed or would commit in the future. We do not imply here that police must have probable cause to use an undercover agent or informer to make a drug buy. We emphasize that *police not only did not suspect defendant of involvement in cocaine sales; they had every reason to suspect that he was not involved. In part, the police activity here is entrapment because the sale of large quantities of cocaine is an offense of a different order than the use of cocaine or the sale of marijuana.*

We do not view this case as one in which a close personal friendship was exploited or one in which the pattern of inducement itself was outrageous. Nonetheless, the exploitation of a friendship and the offer of monetary gain may have been sufficient to induce most persons in defendant's position (i.e., cocaine users) to sell cocaine. *Because police knew that defendant was not a cocaine dealer, yet induced him to make substantial cocaine sales, we must conclude that*

*police agents impermissibly manufactured or instigated a crime.* [*Id.* at 223-224 (citations omitted; emphasis added).]

Here, unlike the circumstances that were present in *Killian*, law enforcement did not have *any* information about defendant before conducting the undercover operation. In contrast, the police in *Killian* had information that the defendant was not previously involved in selling cocaine before targeting that defendant to induce him to begin selling cocaine. *Id.* The operation in the present case is more analogous to the undercover operations in *Butler* and *Williams*, where something illegal was made available for those seeking it to contact the undercover officer and offer to purchase it. As we have already explained, that is precisely what occurred in this case. Moreover, government escalation of the defendant's criminal culpability is only one factor and is not itself dispositive on the issue of entrapment. *Johnson*, 466 Mich at 498-499; *Killian*, 117 Mich App at 223. To the extent defendant argues that he was deceived, that fact by itself also does not establish entrapment. *Williams*, 196 Mich App at 663 ("Moreover, entrapment does not occur merely because the undercover officers posed as drug dealers, because the mere fact of deceit will not bar prosecution.").

Defendant also contends that the trial court erred by focusing on defendant's subjective state of mind and predisposition to commit this crime. However, "although the objective test is mainly concerned with the existence of reprehensible police conduct, consideration must be given to the willingness of the accused to commit the act weighed against how a *normally law-abiding person* would react *in similar circumstances*." *People v Juillet*, 439 Mich 34, 54; 475 NW2d 786 (1991) (opinion by BRICKLEY, J.) (quotation marks and citation omitted). Hence, "the court can review the circumstances of the defendant to determine whether the police conduct would induce a similarly situated person, with an otherwise law-abiding disposition, to commit the charged crime. The circumstances of the particular defendant may be considered by the trial court in analyzing the ready and willing component of the objective entrapment test, as we stated in *Jamieson*."[2] *Id.* at 55.

The trial court in this case did not err in its application of the legal framework for discerning whether entrapment occurred under the inducement prong of the test. *Jade*, ___ Mich App at ___; slip op at ___. Furthermore, based on our review of the record, we are not left with a definite and firm conviction that the trial court made a mistake in its factual findings and we therefore conclude that its findings were not clearly erroneous. *Johnson*, 466 Mich at 497-498. The trial court also did not clearly err in finding that law enforcement in this case did not engage in impermissible conduct that would have induced a law-abiding person to commit the criminal acts in similar circumstances. *Johnson*, 466 Mich at 498.

## B. REPREHENSIBLE CONDUCT

Entrapment may also be found if "the police engaged in conduct so reprehensible that it cannot be tolerated." *Johnson*, 466 Mich at 498. In defining the reprehensible conduct prong, this Court has explained that "there is certain conduct by government that a civilized society simply will not tolerate, and the basic fairness that due process requires precludes continuation of the

---

[2] *People v Jamieson*, 436 Mich 61; 461 NW2d 884 (1990).

prosecution where the police have gone beyond the limit of acceptable conduct in ensnaring the defendant, without regard to causation." *People v Fabiano*, 192 Mich App 523, 532; 482 NW2d 467 (1992).

Here, the trial court found that the law enforcement conduct in this case was not so reprehensible that it cannot be tolerated because the conduct merely consisted of presenting defendant with the opportunity to commit the criminal acts at issue. As previously stated, simply presenting the opportunity to commit criminal acts in an untargeted fashion is not reprehensible conduct constituting entrapment. *Johnson*, 466 Mich at 508 ("[T]he police did nothing more than provide defendant with an opportunity to commit a crime. Such conduct was not reprehensible and does not establish entrapment."); see also *Butler*, 444 Mich at 965-966; *Williams*, 196 Mich App at 662-663. The trial court in this case specifically found as follows:

> [T]he police presented defendant with an opportunity to commit a crime. Defendant's only hesitation appears to have been based on a concern that he would be caught violating the law. The entrapment defense is not meant to benefit a "cautious but ready" lawbreaker. . . . While the police did take investigative steps that changed the nature of the crimes defendant is alleged to have committed, there is no evidence that the police took those steps merely to enhance defendant's eventual sentence. Identifying individuals willing to make plans to engage in sex with minors is a legitimate law enforcement goal that justifies the decision to see whether defendant's conduct might expose him to heightened criminal liability. When the police do nothing more than provide a defendant with an opportunity to commit a crime, such conduct is not reprehensible and does not establish entrapment. *Johnson*, 466 Mich at 507-[5]08. Consequently, the escalation in this case was not so reprehensible as to warrant finding defendant was entrapped.

We discern no error in the trial court's application of the law, nor do we discern clear error in the court's findings. *Jade*, ___ Mich App at ___; slip op at ___; *Johnson*, 466 Mich at 497-498. Here, as was true in *Williams*, "[t]he purpose of the challenged police activity was the detection of crime, not its manufacture." *Williams*, 196 Mich App at 663. In concluding that the trial court did not clearly err in its determination on either prong of the entrapment test, we therefore also conclude that the trial court did not clearly err in its ultimate decision to deny defendant's motion to dismiss on the ground of entrapment. *Jade*, ___ Mich App at ___; slip op at ___; *Johnson*, 466 Mich at 497-498.

Affirmed.

/s/ Stephen L. Borrello
/s/ Christopher M. Murray
/s/ Anica Letica