PEOPLE v FABIANO

Docket No. 134362. Submitted September 10, 1991, at Grand Rapids.
    Decided January 21, 1992, at 9:40 A.M. Leave to appeal denied,
    439 Mich —.

    Mark R. Fabiano pleaded guilty in the Kent Circuit Court,
    Dennis C. Kolenda, J., of attempted delivery of less than fifty
    grams of cocaine after the court denied his motion for dismissal
    because of entrapment. The court ruled that entrapment was
    not established under an objective test because the conduct of
    the police and an informant, while reprehensible, did not
    induce or instigate the commission of the crime. The defendant
    appealed.

        The Court of Appeals held:

        A two-pronged test for entrapment emerged from People v
    Juillet, 439 Mich 34 (1991), in opinions written by BRICKLEY, J.
    (joined by RILEY and GRIFFIN, JJ.), by CAVANAGH, C.J. (joined
    by LEVIN and MALLETT, JJ.), and by BOYLE, J. The first prong,
    which was endorsed in the opinions of Justices BRICKLEY and
    BOYLE, provides that entrapment may be found where the
    police engage in impermissible conduct that would induce an
    otherwise law-abiding person to commit a crime in similar
    circumstances. The second prong, which was endorsed in the
    opinions of Chief Justice CAVANAGH and Justice BOYLE, pro-
    vides that entrapment may be found where the police engage in
    conduct so reprehensible that it cannot be tolerated in a
    civilized society, irrespective of whether that conduct caused
    the particular defendant to commit the crime. A defendant
    establishes entrapment upon satisfying either prong of the test.

        Remand is necessary in this case for an application of the
    two-pronged entrapment test of Juillet.

        Remanded.

        GRIFFIN, J., dissenting, stated that agreement on a new test
    for entrapment was not reached by a majority of justices in

REFERENCES

Am Jur 2d, Criminal Law §§ 202-206
Modern status of the law concerning entrapment to commit narcot-
    ics offense—state cases. 62 ALR3d 110.
Entrapment to commit offense with respect to narcotics law. 33
    ALR2d 883.

*People v Juillet;* that *Juillet* applies only to the parties in that case and its companion case, *People v Brown,* and cannot serve as binding precedent; that the objective test, as applied by the trial court, remains the test for entrapment; and that the trial court did not clearly err in making its findings of fact and its decision should be affirmed.

CRIMINAL LAW — ENTRAPMENT.

Entrapment may be found either where the police engage in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances or where the police engage in conduct so reprehensible that it cannot be tolerated in a civilized society, irrespective of whether that conduct caused the particular defendant to commit the crime.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people.

*Larry C. Willey,* for the defendant.

Before: SAWYER, P.J., and MURPHY and GRIFFIN, JJ.

SAWYER, P.J. Defendant pleaded guilty to a charge of attempted delivery of cocaine in an amount less than fifty grams. MCL 750.92; MSA 28.287 and MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv). He now appeals, and we remand.

Defendant's only argument on appeal is that the trial court erred in denying his motion for a dismissal based on entrapment. This case involves two sales of relatively small amounts of cocaine, one to a police informant and the other to an undercover police officer, as arranged by the informant. The police informant had been a childhood friend of defendant, though the two had lost track of each other in recent years. The events leading

to defendant's arrest occurred after the informant and defendant met again in a chance encounter. The informant had other difficulties with the law and was seeking to cooperate with the police in order to obtain leniency in those other matters. After some persistence by the informant, defendant agreed to the sales involved and apparently made no profit from the sales.

In its opinion following an entrapment hearing, the trial court found that the police informant lied during his testimony and that defendant's version of the events was believable. The court, however, also found that defendant's version of the events did not establish entrapment. The trial court found that, while the police informant's conduct was reprehensible, it did not induce or instigate the commission of a crime and, therefore, entrapment did not occur. The trial court did note that it was a very close question and that had the informant gone "just a bit further," entrapment would have occurred.

We review the trial court's finding that the defendant was not entrapped under the clearly erroneous standard of review. *People v Jamieson,* 436 Mich 61, 93; 461 NW2d 884 (1990); see also *People v Juillet,* 439 Mich 34, 69; 475 NW2d 786 (1991) (opinion of BRICKLEY, J.). In this case, the trial court issued a lengthy written opinion that was both well reasoned and well written. Were *Jamieson* the last word on entrapment, we would affirm the trial court's finding that defendant was not entrapped for the reasons set forth in the trial court's opinion.

However, the Supreme Court recently issued its decision in *Juillet, supra.* Despite the protestations of Justice BRICKLEY and Chief Justice CAVANAGH that *Juillet* does not change the entrapment test

as adopted in *Jamieson,*[1] we conclude that a careful reading of the justices' various opinions indicates that *Juillet,* while continuing to adhere to an objective test, does change the nature of that test.[2] Specifically, we conclude that four justices would find entrapment if (1) the police engaged in impermissible conduct that would have induced a person similarly situated as the defendant, though otherwise law-abiding, to commit the crime,[3] *or* (2) the police engaged in conduct so reprehensible that it cannot be tolerated by the Court.

A review of the opinions in *Juillet* is appropriate to explain our view of the current state of the law on entrapment. Turning first to the first prong, the government-instigation prong, we find that it is similar to the entrapment test as stated in prior decisions of the Supreme Court. The primary change involves the issue of causation, i.e., we must now determine whether the police conduct would have induced a person similarly situated as the defendant to commit the crime rather than whether it would have induced an average, law-abiding citizen to commit the offense. On this point, we believe that four justices reached agreement in *Juillet.*

---

[1] See *Juillet, supra* at 60 (opinion of BRICKLEY, J.) and 70 (CAVANAGH, C.J., concurring).

[2] We do not appear to be alone in this conclusion. See *What Is The Law of Entrapment In Michigan?,* The Michigan Prosecutor, Vol 25, No 4 (October 10, 1991), p 1.

[3] As will be discussed more later in the opinion, this prong of the test, which we refer to as the government-instigation prong, is similar to the entrapment test articulated in *Jamieson* and earlier cases. The reference in the case law is often to "reprehensible conduct" rather than "impermissible conduct." We do not suggest a change in this respect. We choose to use the word "impermissible" to distinguish the first prong from the second, reprehensible-conduct prong. The test for the first prong remains the same: the police conduct is impermissible if it would induce an otherwise law-abiding person, not ready and willing to commit the offense, to engage in the criminal activity. See *Jamieson, supra* at 68 (opinion of BRICKLEY, J.) and 94 (opinion of CAVANAGH, J.).

First, there is the opinion of Justice BRICKLEY, joined by Justices RILEY and GRIFFIN. This opinion adopts as the entrapment test the first prong we have outlined above. The BRICKLEY plurality sets forth an entrapment test under which it must be "determine[d] whether the police conduct in question ha[d] as its 'probable and likely outcome the instigation rather than the detection of criminal activity.'" *Juillet, supra* at 53, quoting *Jamieson, supra* at 77. Justice BRICKLEY further explains this test by stating that "although the objective test is mainly concerned with the existence of reprehensible police conduct, consideration must be given to 'the willingness of the accused to commit the act weighed against how a *normally law-abiding person* would react *in similar circumstances.*'" *Juillet, supra* at 54, quoting *Jamieson, supra* at 74 (emphasis in *Juillet*). Thus, according to Justice BRICKLEY, "the court can review the circumstances of the defendant to determine whether the police conduct would induce a similarly situated person, with an otherwise law-abiding disposition, to commit the charged crime." *Juillet, supra* at 55. Thus, the trial court may consider the circumstances of the particular defendant and consider the effects of the police conduct upon a normally law-abiding person in the circumstances presented to the defendant. *Id.*

In searching for a fourth vote in support of Justice BRICKLEY's position, we look first to Chief Justice CAVANAGH's concurring opinion. The Chief Justice agreed with Justice BRICKLEY's formulation, except that the Chief Justice would not give consideration to the circumstances of the defendant, looking instead to the effect of the police conduct on "a hypothetical person who had not yet reached that level of criminal activity (even if he

was not a spotlessly law-abiding person) to do so."
*Juillet, supra* at 76.

Turning to Justice BOYLE's opinion, she would find entrapment where government conduct instigates criminal conduct, but would allow full inquiry into "all evidence bearing on the question, including predisposition [of the defendant]." *Id.* at 98. Although Justice BOYLE would go further than Justice BRICKLEY in utilization of subjective consideration of the particular defendant and his circumstances in applying the government-instigation prong of the entrapment test, she nevertheless explicitly accepted Justice BRICKLEY's formulation of this prong in order to arrive at a clear holding on this issue:

> I have opted to align myself with the instigation analysis of the lead opinion because to leave the Court in its divided posture is to do, perhaps, greater damage to the Court and the jurisprudence than I fear from either of the new "objective" tests. [*Juillet, supra* at 109.]

Accordingly, we conclude that the formulation of the government-instigation prong of the entrapment test is as set out in Justice BRICKLEY's opinion.

Turning to the second prong set out above, the reprehensible-conduct prong, there has been some disagreement in our Court over whether reprehensible conduct by the police is sufficient to establish entrapment or whether that conduct must also instigate the offense. In *People v Wisneski,* 96 Mich App 299, 303; 292 NW2d 196 (1980), this Court, quoting *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973), stated that the "real concern in entrapment cases is 'whether the actions of the police were so reprehensible under the circumstances, that the Court should refuse, as a matter

of public policy, to permit a conviction to stand.' "
However, in *People v Wilson,* 166 Mich App 143;
419 NW2d 750 (1988), a panel of this Court said
that the entrapment "defense is not, however,
available any time the police do something which
can be characterized as 'reprehensible.' " *Id.* at
145.

Regardless of whether the prior formulations of
the entrapment test required causation in addition
to reprehensible police conduct, we conclude that a
majority of the justices in *Juillet* agree that repre-
hensible conduct alone can constitute entrapment.
Looking first at Chief Justice CAVANAGH's opinion,
which was joined by Justices LEVIN and MALLETT,
the Chief Justice states:

> I concluded in *Jamieson* that "affording a person
> an opportunity to commit an offense does not
> ordinarily constitute entrapment *unless* (1) the
> circumstances indicate that such an opportunity
> would not normally be presented *or* (2) the mere
> furnishing of the opportunity requires the police to
> commit certain criminal, dangerous, or immoral
> acts." 436 Mich 95-96 (emphasis in original). The
> first prong of this test largely corresponds to the
> causation prong at the heart of Justice BRICKLEY's
> analysis. The second prong reflects what I believe
> to be the broader "reprehensible conduct" prong of
> the objective entrapment test. Thus, there may
> well be cases in which, even though entrapment
> may not be established under a strictly causation-
> oriented approach, I might still conclude that ille-
> gal entrapment has occurred. [*Juillet, supra* at 77-
> 78.]

Thus, three justices are clearly willing to find that
entrapment can be found on the basis of reprehen-
sible police conduct alone. See *Juillet, supra* at 72.

Turning to Justice BOYLE's opinion, we see that
she, too, would allow a finding of entrapment on
the basis of reprehensible police conduct alone:

. . . I would embrace a dual view of "entrapment" that would bar prosecution because of truly reprehensible police conduct and would bar prosecution for conduct that instigates or manufactures crime. Government misconduct would be evaluated by focusing on police conduct. Government instigation would be evaluated subjectively by taking into account the defendant's circumstances and the interaction between the government agent and the defendant, and the trial court would determine both issues as a matter of law. Such an approach will accommodate the necessity to protect against overzealous law enforcement that is the heart of the objective approach, *Sherman v United States,* 356 US 369, 381; 78 S Ct 819; 2 L Ed 2d 848 (1958) (Frankfurter, J., concurring in the result), while preserving the opportunity for the defendants who claim that, although the police conduct was not intolerable in the objective sense, it was intolerable in light of the particular circumstances.

The objective misconduct defense is justified when the government engages in illegal behavior, the government conduct invades personal privacy, the government unfairly manufactures antisocial activity, or "because [entrapping behavior] places in the hands of the executive the power to make criminals." Seidman, *The Supreme Court, entrapment, and our criminal justice dilemma,* 1981 Sup Ct R 111, 145. [*Juillet, supra* at 94.]

In Justice BOYLE's view, this reprehensible-conduct prong is met when "the government's conduct falls below an acceptable standard for the fair and honorable administration of justice." *Id.* at 98. Similarly, Chief Justice CAVANAGH says that "the fundamental principle is that ' " '[n]o matter what the defendant's past record and present inclinations to criminality, or the depths to which he has sunk in the estimation of society, certain police conduct to ensnare him into further crime is not to be tolerated by an advanced society.' " ' [*United*

*States v] Russell,* [411 US 423, 437; 93 S Ct 1637; 36 L Ed 2d 366 (1973)] (Douglas, J., joined by Brennan, J., dissenting), quoting *Sherman* [v *United States,* 356 US 369, 382-383; 78 S Ct 819; 2 L Ed 2d 848 (1958)] (Frankfurter, J., joined by Douglas, Harlan, and Brennan, JJ., concurring in the result)." *Juillet, supra* at 77.

For the reasons stated above, we conclude that *Juillet* establishes a two-pronged objective test for entrapment, with entrapment existing if *either* prong is met. As stated above, the nature of the police conduct is relevant under both prongs of the test. However, our reading of the opinions in *Juillet* leads us to the conclusion that the nature of the conduct requirement differs for the two prongs; if they did not, then the first prong would be meaningless. Rather, the correct interpretation would be that the police conduct must be more reprehensible under the second prong than under the first prong.

Thus, entrapment is established under the first prong, the causation test, if the conduct is sufficiently reprehensible to induce the commission of the offense as analyzed by Justice BRICKLEY in *Juillet.* That is to say, the first prong is similar to the traditional objective test for entrapment: entrapment exists if the police conduct would induce a person not ready and willing to commit an offense to commit the offense; entrapment does not exist if the conduct would induce only those persons who are ready and willing to commit the offense to do so. See Dressler, *Understanding Criminal Procedure* (Matthew Bender & Co, 1991), § 172, p 360. The only difference is that the court, rather than considering the hypothetical average person, looks to an otherwise law-abiding citizen in similar circumstances as the defendant. However, under the second prong, entrapment exists if the

police conduct is so reprehensible that we cannot tolerate the conduct and will bar prosecution on the basis of that conduct alone, as discussed by Chief Justice CAVANAGH and Justice BOYLE in their respective opinions in *Juillet*. We would liken this to a due process violation. See *id.* at 85-86. That is, there is certain conduct by government that a civilized society simply will not tolerate, and the basic fairness that due process requires precludes continuation of the prosecution where the police have gone beyond the limit of acceptable conduct in ensnaring the defendant, without regard to causation.[4]

Turning to the case at bar, the trial court found that "entrapment would likely have been established" if only inappropriate police behavior was considered, but that the requirement of inducement or instigation had not been established. We believe that a remand to the trial court is appropriate in this circumstance. First, the trial court noted that this was a very close case. Second, the trial court applied the "average law-abiding person" standard to the entrapment analysis, rather than considering a hypothetical person in the defendant's circumstances as required by Justice BRICKLEY. Further, the trial court, understandably, did not consider whether entrapment exists under the second prong of the test as outlined above. Although it appears that the trial court concluded that the police engaged in reprehensible conduct, it made no findings on the issue whether the

---

[4] Our view of this two-pronged test is also apparently shared by the article in The Michigan Prosecutor, *supra* at 1, which states:

In summary, it appears that four justices agree with an objective test for entrapment which allows consideration of the circumstances of the defendant as expressed by Justice BRICKLEY, and four justices agree in a type of entrapment based upon reprehensible police conduct irrespective of whether that conduct caused the particular defendant to commit the crime.

conduct was so reprehensible that entrapment exists without regard to causation.

In light of our determination that a remand is in order, we decline to address at this time the prosecutor's argument that defendant has waived review of the entrapment issue by pleading guilty. We reserve consideration of this issue until after remand.

On remand, the trial court shall conduct a new entrapment hearing. It is within the trial court's discretion to determine whether to take additional evidence. Because it is likely that regardless of the trial court's determination the parties will wish further review by this Court,[5] we retain jurisdiction. The trial court shall promptly file with this Court any opinion or order entered on remand, as well as the transcript of the hearing(s) held on remand. The aggrieved party may file a supplemental brief with us within twenty-eight days after the filing of the transcript, with the prevailing party being allowed to file a responsive brief within twenty-eight days after the service of the aggrieved party's brief.

Remanded for further proceedings consistent with this opinion. We retain jurisdiction.

MURPHY, J., concurred.

GRIFFIN, J. *(dissenting).* I respectfully dissent. The lower court in a comprehensive and well-reasoned opinion correctly applied Michigan's objective entrapment test. Because the ruling below was not clearly erroneous, I would affirm.

---

[5] Defendant would likely wish further review if the trial court on remand again finds no entrapment, while the prosecutor would likely wish us to resolve the waiver issue if the trial court now concludes that defendant was entrapped.

I

In my view, *People v Juillet,* 439 Mich 34; 475 NW2d 786 (1991), is not binding precedent because a majority of the justices were unable to agree on a new rule of law. Under such circumstances, only the parties in that case and its companion case of *People v Brown* are bound by the decision. As the Michigan Supreme Court has stated:

> Since there is no agreement by a majority of the United States Supreme Court regarding the limitation of right to counsel in *Kirby* [*v Illinois,* 406 US 682; 92 S Ct 1877; 32 L Ed 2d 411 (1972)], we are not permitted to follow *Kirby* as authoritative precedent on the question of counsel. The clear rule in Michigan is that a majority of the Court must agree on a ground for decision in order to make that binding precedent for future cases. If there is merely a majority for a particular result, then the parties to the case are bound by the judgment but the case is not authority beyond the immediate parties. [*People v Anderson,* 389 Mich 155, 170; 205 NW2d 461 (1973).]

Also see *Dean v Chrysler Corp,* 434 Mich 655, 661, n 7; 455 NW2d 699 (1990), and *Negri v Slotkin,* 397 Mich 105, 108-109; 244 NW2d 98 (1976).

II

In the present case, the majority concludes that the opinions in *Juillet* by Chief Justice CAVANAGH (joined by Justices LEVIN and MALLETT) and by Justice BOYLE agree upon a ground for decision and thereby establish a new rule of law with respect to a reprehensible-conduct test for entrapment. I do not agree. A careful reading of the two opinions reveals a fundamental disagreement be-

tween the Chief Justice and Justice BOYLE regarding a new test for entrapment that is based solely on reprehensible police conduct.

Justice BOYLE expressly acknowledges this disagreement as follows:

> Fourth, Chief Justice CAVANAGH and I would recognize, *to different degrees,* a reprehensible-conduct test for entrapment. [*People v Juillet, supra,* p 87; emphasis added.]

Not only do the Chief Justice and Justice BOYLE disagree on the nature of necessary reprehensibility under their respective tests, they also disagree on the constitutional basis for such a defense. The Chief Justice writes:

> I disagree with the limited reading thus far given to the concept of due process by the United States Supreme Court in this area, and I would find that the entrapment doctrine, as applied in this state through the prevailing objective test, is properly rooted in the Due Process Clause of the Michigan Constitution. See Const 1963, art 1, § 17. [*Id.,* pp 85-86.]

In a footnote, Justice BOYLE distances herself from the constitutional ground relied on by the Chief Justice:

> I wish to make clear, in connection with the misconduct question, that I disassociate myself from the unnecessary dicta of the Chief Justice that the entrapment doctrine is rooted in the Due Process Clause of the Michigan Constitution. [*Id.,* p 109, n 30.]

In response, Chief Justice CAVANAGH writes:

> Justice BOYLE opines that my discussion in this

section constitutes "unnecessary dicta." *Post,* p
109, n 30. It is odd indeed, in my view, to suggest
that an articulation of the underlying legal basis
of the dispositive analysis applied by a court or
judge to decide a case constitutes "unnecessary
dicta." [*Id.,* p 86, n 6.]

Most importantly, the result in the application
of the two respective tests is significantly different.
As *Juillet* indicates, under the reprehensible-con-
duct test advocated by Justice BOYLE, defendant
Juillet was not entrapped as a matter of law. In
marked contrast, defendant Juillet was entrapped
under the test proposed by Chief Justice CAV-
ANAGH. In light of the fundamental disagreements
outlined above, I cannot conclude that a majority
of the Supreme Court has agreed on a "ground for
decision," thereby establishing a new rule of law
for entrapment.

III

The majority in the present case further con-
cludes that a remand is necessary because the
objective entrapment test employed by the lower
court has been changed by Justice BRICKLEY's
opinion in *Juillet.* Justice BRICKLEY, however, de-
nies that *Juillet* alters the objective test and would
find a remand unnecessary:

In response to Justice BOYLE's claim that we are
altering the objective test for entrapment in these
cases, we respectfully note that Justice BOYLE
signed an opinion, only one year ago, which not
only endorsed continued adherence to the objective
test, but stated "that there is some overlapping in
application between the two tests [objective and
subjective] and that the best of each can, to some
extent, be utilized." *Jamieson* at 79. Similarly, the
assertion that we have, in these cases, adopted the

"defendant's circumstances" as a new standard for evaluating the claim of entrapment is simply not true. In *Jamieson* we stated:

"When applying the *objective test,* consideration is given to the willingness of the accused to commit the act weighed against how a normally law-aiding person would *react in similar circumstances.*" [*Id.* at 74.]

Therefore, we are clearly not departing from the current jurisprudence which this Court has espoused; any implication to the contrary by Justice Boyle is an incorrect characterization or interpretation of our opinion. [*People v Juillet, supra,* pp 59-60.]

Chief Justice Cavanagh also disagrees with Justice Boyle's conclusion that *Juillet* changes the objective test:

I disagree with Justice Boyle that the test established today is a "new test[] for entrapment not encompassed in the objective test." Boyle, J., *post,* p 87. While I myself have some problems with Justice Brickley's analysis, his opinion in *People v Jamieson,* 436 Mich 61; 461 NW2d 884 (1990), represented a logical development in entrapment law, faithful to our precedents, and Justice Brickley's analysis in the instant cases, whatever its problems, is perfectly consistent with his *Jamieson* analysis. [*Id.,* p 70.]

In *Juillet,* the remand of *Brown* occurred only because Chief Justice Cavanagh concurred in the result:

Because the justices signing this opinion do not constitute a majority, however, I reluctantly concur *in the result* reached by Justice Boyle, insofar as she would reverse the erroneous analysis of the lower courts and remand for a new entrapment hearing . . . . [*Id.,* p 83; emphasis added.]

Justice BOYLE is clearly the only justice who believes that Justice BRICKLEY's lead opinion alters the objective test. She is the lone justice who would find a remand necessary. The remand ordered in the present case is therefore unnecessary and not compelled by *Juillet.*

Until and unless a majority of the justices of the Supreme Court agree on a new rule of law concerning entrapment, the previously established objective test remains binding precedent. In my view, the lower court applied the correct legal standard. Further, its finding that entrapment did not occur was not clearly erroneous. Accordingly, I would affirm.