# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
October 29, 2015

Plaintiff-Appellee,

v

No. 322555
Berrien Circuit Court
LC No. 2012-015106-FH

JEFFREY GENE MILLER,

Defendant-Appellant.

Before: TALBOT, C.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

Defendant, Jeffrey Gene Miller, pleaded guilty to delivery of marijuana, MCL 333.7401(2)(d)(*iii*). He was sentenced to pay $1,598 in fines and costs. Defendant filed an application for leave to appeal on July 7, 2014, which we granted. We now affirm his conviction.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Detective Roger Johnson, acting as an undercover officer, requested to purchase marijuana from defendant through Facebook. Detective Johnson posed as a construction worker named "Jason Brooks." Defendant told "Brooks" that he would not sell him marijuana without a registry identification card pursuant to the Michigan Medical Marihuana[1] Act (MMMA). Detective Johnson obtained a fake driver's license and a fake registry identification card from the Michigan State Police. After defendant learned that "Brooks" had a registry identification card, he agreed to sell "Brooks" marijuana for $100. Detective Johnson and defendant met in the parking lot of a Rural King in Niles Township and completed the first exchange. A few days later, they completed a second transaction in the parking lot of a Wal-Mart. Defendant asked "Brooks" to see his registry identification card before each transaction, and while defendant admittedly had reservations about the card and thought that it did not look like his own registry identification card, he completed the sales regardless of those concerns.

---

[1] Although the statute uses the variant spelling "marihuana," we use the more common spelling "marijuana" throughout this opinion, unless quoting from the MMMA.

The undisputed record reveals that defendant and "Brooks" did not have a patient-caregiver relationship established through the state's registration process under the MMMA; in other words, defendant was never "connected" to "Brooks" as a primary caregiver under the act.[2] Defendant testified at a July 26, 2012 hearing on his motion to dismiss that he believed his relationship with "Brooks" was "leading towards a patient relationship" and that he brought attestation papers to one of the sales that would be required to designate a primary caregiver. However, he never completed the paperwork. Despite not taking any steps to formalize the patient-caregiver relationship, defendant testified that he believed there was an "official relationship" with "Brooks" because they had been "talking about caregiver status."

After the two transactions took place, defendant was charged with two counts of delivery of marijuana. He moved to dismiss the charges on the basis of entrapment, entrapment by estoppel, and due process. He also attempted to assert § 4[3] immunity and a § 8[4] affirmative defense under the MMMA. The trial court denied his motion to dismiss. Thereafter, defendant pleaded guilty to one of the charges in exchange for dismissal of the other. The record reveals that defendant entered an unconditional guilty plea.

## II. WAIVER

Defendant argues that the trial court erred in determining that he was barred from asserting § 4 immunity or a § 8 affirmative defense. He also argues that he was entrapped. At the outset, we note that the prosecution argues that, by pleading guilty, he waived his ability to argue immunity under § 4 of the MMMA or the § 8 affirmative defense under the act. We disagree that he waived a § 4 immunity defense but agree that he waived his § 8 affirmative defense.

"A plea of guilty waives all defenses and rights that relate solely to the capacity of the state to prove the defendant's *factual guilt*." *People v Johnson*, 207 Mich App 263, 264; 523 NW2d 655 (1994) (emphasis added). See also *People v Vonins (After Remand)*, 203 Mich App 173, 175; 511 NW2d 706 (1993). However, a guilty plea does not waive every type of claim. In *People v New*, 427 Mich 482, 495-496; 398 NW2d 358 (1986), our Supreme Court discussed the types of claims that are waived following an unconditional guilty plea or plea of nolo contendere:

---

[2] The MMMA requires that a qualifying patient be "connected" to the primary caregiver through the "department," MCL 333.26424(b), meaning the "department of licensing and regulatory affairs," MCL 333.26423(c). See also *People v Hartwick*, __ Mich __; __ NW2d __ (Docket Nos. 148444 and 148971), issued July 27, 2015, slip op at 8 n 15 (explaining that "[w]hen a qualifying patient [under the MMMA] elects a primary caregiver, a registry identification card is also issued to the primary caregiver. When a qualifying patient has properly designated a primary caregiver under the MMMA, the primary caregiver is said to be "connected" to that particular qualifying patient.").

[3] MCL 333.26424, discussed in more detail *infra*.

[4] MCL 333.26428, discussed in more detail *infra*.

[A] criminal defendant may appeal from an unconditional guilty plea or a plea of nolo contendere only where the claim on appeal implicates the very authority of the state to bring the defendant to trial, that is, where the right of the government to prosecute the defendant is challenged. Such rights are never waived by a plea of guilty or nolo contendere. Where the claim sought to be appealed involves only the capacity of the state to prove defendant's factual guilt, it is waived by a plea of guilty or nolo contendere.

"Another phrasing of this principle . . . is that 'jurisdictional' defenses are not waived by a plea of guilty." *People v Lannom*, 441 Mich 490, 493; 490 NW2d 396 (1992) (citation omitted). See also *People v Carpentier*, 446 Mich 19, 27; 521 NW2d 195 (1994) (citation and quotation marks omitted) ("Defendant may always challenge whether the state had a right to bring the prosecution in the first place."). Here, whether defendant waived his claims by pleading guilty, and therefore should be precluded from raising them on appeal, requires us to examine the claims and defenses at issue to determine whether they relate to the state's ability to prove factual guilt, or whether they are more akin to "jurisdictional" defenses, that is, defenses that "implicate[ ] the very authority of the state to bring the defendant to trial . . . ." See *New*, 427 Mich at 495-496.

## A. IMMUNITY UNDER § 4 OF THE MMMA

The first claim defendant raises on appeal is whether he is entitled to immunity under the MMMA. As will be discussed in more detail below, § 4 of the MMMA, MCL 333.26424, "grants broad immunity from criminal prosecution and civil penalties to qualifying patient[s] and primary caregiver[s]." *People v Hartwick*, __ Mich __; __ NW2d __ (Docket Nos. 148444 & 148971), issued July 27, 2015, slip op at 14 (citations and quotation marks omitted). "Immunity is a unique creature in the law and is distinguishable from other traditional criminal defenses." *Id.* at 16. It is unique in the sense that "[a] successful claim of immunity excuses an alleged offender for engaging in otherwise illegal conduct, *regardless of the sufficiency of proofs in the underlying case*." *Id.* (emphasis added). The immunity granted under § 4 is, as pointed out in *Hartwick*, immunity "*from* prosecution." *Id.* at 17. The decision on whether a defendant is entitled to such immunity must be made before trial. *Id.* Immunity " 'is not a defense that negates an essential element of the charged crime. Instead, it presents facts that are collateral to the crime that justify barring the defendant's prosecution.' " *Id.* at 18, quoting *People v Juillet*, 439 Mich 34, 52; 475 NW2d 786 (1991) (opinion by BRICKLEY, J). A defendant claiming immunity under § 4 does so "without regard to *his or her underlying guilt or innocence of the crime charged*." *Id.* at 20 (emphasis added).

In light of the nature of immunity granted under § 4 of the MMMA, we conclude that it is not the type of defense that is waived by entering an unconditional guilty plea. As discussed in *Hartwick*, immunity claimed under § 4 is not concerned with the defendant's guilt or innocence of the crime charged. Rather, it is immunity "*from* prosecution." *Id.* at 17. In other words, the immunity granted under § 4 does not concern a defendant's factual guilt, but rather, concerns whether the prosecution has authority to bring him to trial in the first instance. We believe that this is not the type of defense that is waived by entry of an unconditional guilty plea. See *New*, 427 Mich at 495-496; *Johnson*, 207 Mich App at 265 (explaining that defenses and rights "that implicate the very authority of the state to bring a defendant to trial[ ] are not waived by a guilty plea."). See also *People v Sam*, 482 Mich 1072, 1072; 769 NW2d 227 (2008) (explaining that if

prosecution could not have prosecuted the defendant for the offense pursuant to statute, the defendant's unconditional guilty plea did not waive the issue); *Carpentier*, 446 Mich at 27 ("Defendant may always challenge whether the state had a right to bring the prosecution in the first place.") As such, we conclude that defendant's § 4 immunity defense was not waived by his unconditional guilty plea.[5]

## B. THE § 8 AFFIRMATIVE DEFENSE UNDER THE MMMA

Next, we turn to defendant's alternative claim in which he seeks to assert an affirmative defense under § 8 of the MMMA. The protections afforded under § 8 of the MMMA, MCL 333.26428, are "separate and distinct" from those afforded under § 4 of the act. *People v Kolanek*, 491 Mich 382, 401; 817 NW2d 528 (2012). As will be discussed in more detail below, § 8 provides an affirmative defense to those who were unable to satisfy the requirements of immunity under § 4 of the act. *Id.* at 402. See also *People v Redden*, 290 Mich App 65, 81; 799 NW2d 184 (2010). The affirmative defense is not like the grant of immunity under § 4; rather, § 8 permits a defendant to defend against criminal charges by showing that his or her use and/or possession of medical marijuana was in keeping with certain requirements set forth in the MMMA. *Kolanek*, 491 Mich at 403-404. A § 8 defense is a "lower level of protection" than immunity under § 4, as it merely provides a defense to the charges. *Id.* at 403. In short, this is more akin to a defense to factual guilt, as it seeks to negate the elements of the offense. This is the type of defense that is waived by an unconditional guilty plea. See *People v Jex*, 489 Mich 983, 983; 799 NW2d 557 (2011) (holding that where a defense would negate an element of the charged offense, the defense is one that would be waived by a guilty plea). See also *People v Allen*, 192 Mich App 592, 600; 481 NW2d 800 (1992); *White*, 411 Mich at 387 (explaining that a self-defense claim involves an assessment of guilt or innocence and is waived by an unconditional guilty plea). Accordingly, we conclude that defendant's § 8 defense was waived by his unconditional guilty plea. Nevertheless, as discussed below, even assuming he did not waive the § 8 affirmative defense, any claim defendant could muster based on § 8 would fail.

---

[5] We note that although *Hartwick*, __ Mich at __, slip op at 17-18, did not decide this precise issue, our Supreme Court in that case compared immunity under § 4 to the defense of entrapment, which, when preserved, is not waived by a guilty plea. The Court did so by noting that, like immunity, entrapment is "not a defense that negates an essential element of the charged crime. Instead, it presents facts that are collateral to the crime that justify barring the defendant's prosecution." *Id.* at 18 (citation and quotation marks omitted). This Court has also compared entrapment to immunity under § 4, for the same reasons. See *People v Jones*, 301 Mich App 566, 575; 837 NW2d 7 (2013). A preserved claim of entrapment is not waived by a guilty plea. See *New*, 427 Mich at 490; *People v White*, 411 Mich 366, 387; 308 NW2d 128 (1981). This is because an entrapment defense does not involve an assessment of the merits of the crime, but instead expresses a policy that prosecution should be barred because of facts that are collateral to the crime. See *New*, 427 Mich at 490; *White*, 411 Mich at 387. The similarity between entrapment and immunity, and the fact that the defense of entrapment is not waived by an unconditional guilty plea, buttresses our conclusion in the instant case.

-4-

## C. ENTRAPMENT

Lastly, although the prosecution does not argue that defendant waived his entrapment defense by pleading guilty, we note that, when a claim of entrapment is timely raised before the trial court, as it was in the instant case, the claim is not waived by a guilty plea. *People v Crall*, 444 Mich 463, 464-465; 510 NW2d 182 (1993). See also *White*, 411 Mich at 387 ("A claim of entrapment does not involve an assessment of guilt or innocence, but rather expresses a policy that there should be no prosecution at all. In that respect, it is like a jurisdictional defect which is not waived by a plea of guilty.").

## III. THE MMMA

Next, we turn our attention to defendant's claims under §§ 4 and 8 of the MMMA. Defendant raised his arguments in two motions to dismiss before the trial court. We review a trial court's decision on a motion to dismiss for an abuse of discretion; however, "[q]uestions of statutory interpretation, including interpretation of the MMMA, are reviewed de novo." *People v Tuttle*, 304 Mich App 72, 80; 850 NW2d 484 (2014), aff'd in part and rev'd in part on other grounds *Hartwick*, ___ Mich at __, slip op at 49. A trial court's findings of fact at a hearing on a motion to dismiss may not be set aside unless they are clearly erroneous. *Id.* A finding is clearly erroneous if we are "left with a definite and firm conviction that the trial court made a mistake." *Id.* (citation and quotation marks omitted).

The MMMA, MCL 333.26421 *et seq.*, permits a limited class of individuals to engage in the "medical use" of marijuana. *Kolanek*, 491 Mich at 393. The right is limited to "individuals suffering from serious or debilitating medical conditions or symptoms, to the extent that the individuals' marijuana use" is in compliance with the MMMA. *Id.* at 394. Apart from this exception, the use, possession, and delivery of marijuana remain punishable offenses in Michigan under the Public Health Code. *Id.* This case, like a host of litigation before it, involves two sections of the MMMA—§ 4 and § 8—that provide protections from prosecution for certain marijuana offenses under the Public Health Code.

## A. SECTION 4 IMMUNITY

Section 4 of the MMMA grants "broad immunity from criminal prosecution, civil penalties, and disciplinary actions" to "qualifying patients" and "primary caregivers" engaged in the "medical use" of marijuana. *Kolanek*, 491 Mich at 394-395, citing MCL 333.26424. "Medical use" is defined under the MMMA as "the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition." MCL 333.26423(f). Here, defendant sought to assert immunity under § 4(b) as a primary caregiver. As to primary caregivers, the statute sets forth a volume limitation for the amount of marijuana a primary caregiver can possess, and provides, in pertinent part:

> A primary caregiver who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or

disciplinary action by a business or occupational or professional licensing board or bureau, for assisting a qualifying patient to whom he or she is connected through the department's registration process with the medical use of marihuana in accordance with this act. [MCL 333.26424(b).]

As a primary caregiver, defendant bore the burden of establishing the following four elements: he "(1) possessed a valid registry identification card; (2) possessed no more marijuana than allowed under § 4(b); (3) stored any marijuana plants in an enclosed, locked facility; and (4) was assisting *connected qualifying patients* with the medical use of marijuana." *Hartwick*, __ Mich at __, slip op at 25 (emphasis added).[6]

Here, when the trial court denied defendant's motion to dismiss on § 4 grounds, it relied on *State v McQueen*, 293 Mich App 644, 670; 811 NW2d 513, 528 (2011), aff'd on other grounds 493 Mich 135 (2013), which held that patient-to-patient sales of marijuana were not permitted under the MMMA. Our Supreme Court subsequently reversed in part in *State v McQueen*, 493 Mich 135, 160; 828 NW2d 644 (2013). Thereafter, defendant in the instant case again argued that he was entitled to § 4 immunity. The trial court once more found that defendant was not entitled to the protections of § 4 because the Supreme Court's *McQueen* ruling did not ultimately change the outcome of the trial court's previous decision. Although the Court in *McQueen* found that sales of marijuana were permitted under the MMMA, it emphasized that § 4 creates a "*personal* right." *Id.* at 156. Thus, § 4 immunity is not extended to "a registered qualifying patient who transfers marijuana to another registered qualifying patient for the transferee's use . . . ." *Id.* Additionally, a primary caregiver asserting § 4 immunity must be "connected" to his or her patients through the state's registration process in order to qualify for § 4 immunity. *Id.* See also *Hartwick*, ___ Mich at ___, slip op at 25 (finding that one of the

---

[6] Although the charged offense occurred before the *Hartwick* decision was released, "[t]he general rule is that judicial decisions are given *full retroactive effect* and complete prospective application is limited to decisions that overrule clear and uncontradicted caselaw." *People v Johnson*, 302 Mich App 450, 464; 838 NW2d 889 (2013) (emphasis added). "But, the retroactive application of an unforeseeable interpretation of a criminal statute, if detrimental to a defendant, may violate the Due Process Clause." *Id.* (citation, quotation, and alteration omitted). For instance, "due process is violated when the retroactive application of a judicial decision acts or operates as an ex post facto law, i.e., criminalizes conduct that was innocent at the time performed." *Id.* at 464-465. Here, we do not have any ex post facto concerns. Defendant was charged with violating the Public Health Code, *not* the MMMA, and only the interpretation of the MMMA was at issue in *Hartwick*. Thus, *Hartwick* does not act to criminalize conduct that was otherwise innocent and there are no ex post facto concerns with applying the decision to the instant matter. See *Johnson*, 302 Mich App at 465 (using similar logic with regard to the application of a Michigan Supreme Court decision interpreting the MMMA). Moreover, the Court's decision in *Hartwick* did not overrule clear and uncontradicted caselaw. It simply interpreted the plain meaning of the MMMA. See *Johnson*, 302 Mich App at 465 (applying similar logic).

elements to be proven under § 4 is that the primary caregiver "was assisting *connected* qualifying patients with the medical use of marijuana") (emphasis added).

In light of the foregoing authority, the trial court did not abuse its discretion when it denied defendant's motion to dismiss. Despite the fact that the court initially based its decision on a point of law that was since overruled by our Supreme Court in *McQueen*, the fact remains that defendant was never connected with "Brooks" as his primary caregiver through the state's registration process. Indeed, defendant even admitted that he never filled out the requisite paperwork. At best, he had some discussions with "Brooks" about establishing a primary caregiver relationship, but never formalized the relationship. As recognized by our Supreme Court in *Hartwick*, __ Mich at __, slip op at 45, a primary care giver providing marijuana to an unconnected patient is "clearly outside the parameters of § 4 . . ." and is conduct that is not entitled to immunity under § 4. Thus, defendant failed to meet his burden of proving entitlement to immunity. Even though the trial court initially denied defendant's motion to dismiss on a proposition of law that has since been reversed, "[t]his Court will not reverse a trial court decision when the lower court reaches the correct result even if for a wrong reason." *People v Bauder*, 269 Mich App 174, 187; 712 NW2d 506 (2005), abrogated in part on other grounds by *Giles v California*, 554 US 353, 367-368; 128 S Ct 2678; 171 L Ed 2d 488 (2008).

## B. SECTION 8 AFFIRMATIVE DEFENSE

Defendant is also not entitled to assert the protections under § 8 of the MMMA. If a defendant cannot meet the requirements for § 4 immunity, he might still be entitled to the protections of § 8 of the MMMA. *Kolanek*, 491 Mich at 398. Sections 4 and 8 "provide separate and distinct protections and require different showings . . . ." *Id.* at 401. Unlike § 4 immunity, § 8 allows a defendant to assert an affirmative defense in a criminal prosecution. See MCL 333.26428. This protection is available to any patient or primary caregiver "regardless of registration with the state . . . ." *Hartwick*, ___ Mich at ___, slip op at 30.

"A defendant seeking to assert the MMMA's statutory affirmative defense must present prima facie evidence for each element of § 8(a)." *Id.* at 31. As explained by our Supreme Court in *Hartwick*, this is no easy task, as "[t]he elements of § 8 are clearly more onerous than the elements of § 4." *Id.* at 32. The Michigan Supreme Court in *Kolanek*, 491 Mich at 412-413, outlined the procedure with which a trial court is supposed to consider a motion to dismiss that is based on the defendant's assertion of a § 8 defense:

> [I]f a defendant raises a § 8 defense, there are no material questions of fact, and the defendant shows the elements listed in subsection (a), then the defendant is entitled to the dismissal of the charges following the evidentiary hearing. Alternatively, if a defendant establishes a prima facie case for this affirmative defense by presenting evidence on all the elements listed in subsection (a) but material questions of fact exist, then dismissal of the charges is not appropriate and the defense must be submitted to the jury . . . . Finally, if there are no material questions of fact and the defendant has not shown the elements listed in subsection (a), the defendant is not entitled to dismissal of the charge and the defendant cannot assert § 8(a) as a defense at trial. A trial judge must preclude from the jury's consideration evidence that is legally insufficient to support the §

8 defense because, in this instance, no reasonable juror could conclude that the defendant satisfied the elements of the defense. [Citations and quotation marks omitted.]

In pertinent part, MCL 333.26428(a)(1)-(3) set forth the elements of the affirmative defense as follows:

(1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

(2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

(3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition.

The first element, § 8(a)(1), is itself comprised of three components or sub-elements, which are:

(1) The existence of a bona fide physician-patient relationship,

(2) in which the physician completes a full assessment of the patient's medical history and current medical condition, and

(3) from which results the physician's professional opinion that the patient has a debilitating medical condition and will likely benefit from the medical use of marijuana to treat the debilitating medical condition. [*Hartwick*, __ Mich at __, slip op at 32-33.]

In *Hartwick*, the Court found that a registry identification card satisfies the third sub-element because, as part of the process for obtaining a registry identification card, an applicant is required

to submit a "written certification" representing that: (1) the patient has a debilitating medical condition; and (2) the patient will likely benefit from using medical marijuana. *Id.* at 32.[7]

As noted above, defendant waived the issue of a § 8 defense by entering an unconditional guilty plea. Nevertheless, even if we were to review the issue, it would be meritless. When defendant pursued a § 8 defense before his guilty plea, he failed to offer any evidence on the first and second sub-elements of § 8(a)(1). At the time of the offense in this case, the MMMA did not define a "bona fide physician-patient relationship."[8] However, the common and ordinary meaning of that term requires proof of an ongoing physician-patient relationship. See *Hartwick*, __ Mich at __, slip op at 34-35; *Kolanek*, 491 Mich at 396 n 30. Defendant failed to present any evidence of a bona fide physician-patient relationship with regard to "Brooks." He also failed to present any evidence as to whether a physician completed a full assessment of "Brooks' " medical history and current condition. As a primary caregiver, defendant had "the burden of establishing the elements of § 8(a)(1) for each patient to whom the primary caregiver is alleged to have unlawfully provided marijuana." *Hartwick*, __ Mich at __, slip op at 36. In this regard, defendant, as a primary caregiver, "plainly assume[d] the risk that the patient does not actually meet the elements of § 8(a)(1) or that the patient may not cooperate in a subsequent prosecution of the primary caregiver, regardless what that person may have otherwise told the primary caregiver." *Id.*

Defendant also failed to offer any evidence as to the second element of the affirmative defense under § 8(a)(2), which requires a showing that "Brooks" and defendant were "collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition[.]" Although defendant testified that he never exceeded the volume limitations set forth under § 4, this does not suffice to show that he and "Brooks" did not possess an amount of marijuana that was not more than reasonably necessary to ensure the uninterrupted availability of marijuana for treating "Brooks." See *Hartwick*, __ Mich at __, slip op at 37. Nor did "Brooks' " possession of a registry identification card provide any evidence as to what was a reasonably necessary amount. *Id.*

In sum, defendant did not meet his burden of establishing the elements of a § 8 affirmative defense; thus, he was not entitled to dismissal.[9] There was no material question of

---

[7] The Court additionally found that registry identification cards issued after April 1, 2013 are also prima facie evidence of the second component because of an amendment to the MMMA. See *Hartwick*, ___ Mich at ___, slip op at 6-7 n 10, 33-34. However, because the charged offense in this case occurred in December 2011, before the amendment, the registry identification card alone cannot establish the second component. See *id.* at 34.

[8] Subsequent to the date of the offense in this case, 2012 PA 512 amended the MMMA and, in relevant part, defined a "bona fide physician-patient relationship."

[9] We need not decide whether defendant could establish § 8(a)(3) because he failed to present any evidence on the first two elements of § 8.

fact for the jury to decide regarding whether defendant satisfied the elements in § 8(a). See *Kolanek*, 491 Mich at 412-413. Therefore, the trial court did not abuse its discretion by denying defendant's motion to dismiss because defendant was not entitled to dismissal under § 8.

## IV. ENTRAPMENT

Next, defendant argues that Detective Johnson's conduct wrongfully induced him to commit the charged offense and that the trial court erred by finding that he was not entitled to an entrapment defense. A defendant bears the burden of proving entrapment by a preponderance of the evidence. *People v Woods*, 241 Mich App 545, 554; 616 NW2d 211 (2000). Whether entrapment occurred is a question of law that this Court reviews de novo. *People v Fyda*, 288 Mich App 446, 456; 793 NW2d 712 (2010). We review for clear error the trial court's findings of fact regarding entrapment. *People v Vansickle*, 303 Mich App 111, 115; 842 NW2d 289 (2013).

Entrapment occurs when either "(1) the police engage in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances or (2) the police engage in conduct so reprehensible that the court cannot tolerate it." *Id.* (citation and quotation marks omitted). Entrapment exists if either prong of this two-part test is met. *People v Fabiano*, 192 Mich App 523, 531; 482 NW2d 467 (1992). Under the first part of the entrapment test, we consider several factors, including:

> (1) whether there existed appeals to the defendant's sympathy as a friend, (2) whether the defendant had been known to commit the crime with which he was charged, (3) whether there were any long time lapses between the investigation and the arrest, (4) whether there existed any inducements that would make the commission of a crime unusually attractive to a hypothetical law-abiding citizen, (5) whether there were offers of excessive consideration or other enticement, (6) whether there was a guarantee that the acts alleged as crimes were not illegal, (7) whether, and to what extent, any government pressure existed, (8) whether there existed sexual favors, (9) whether there were any threats of arrest, (10) whether there existed any government procedures that tended to escalate the criminal culpability of the defendant, (11) whether there was police control over any informant, and (12) whether the investigation was targeted. [*People v Johnson*, 466 Mich 491, 498-499; 647 NW2d 480 (2002).]

None of these factors supports a finding of entrapment in this case. The evidence showed that defendant and Detective Johnson had no prior relationship before the charged offenses. Rather, defendant willingly drove to meet with Detective Johnson, who he had never met before, and provided him with marijuana. Thus, although defendant argues that Detective Johnson played on his sympathy by posing as a legitimate "hurting" patient, Detective Johnson did not appeal to defendant's sympathy "as a friend." See *id.* Moreover, defendant was not offered any inducement that would have made the crime unusually attractive to an otherwise law-abiding citizen, nor was he offered any excessive consideration. Detective Johnson gave defendant $100 in each transaction, which he testified was a typical price for the amounts of marijuana that were sold. Detective Johnson also did not use governmental pressure, threats of arrest, or guarantee that defendant's conduct was legal as he was undercover during both transactions.

Furthermore, we note that an "otherwise law-abiding person" would have completed the registration process to establish a patient-primary care-giver relationship before supplying a patient with marijuana. See *Hartwick*, ___ Mich at ___, slip op at 32 ("The statutory scheme of the MMMA is designed to benefit those who properly register and are meticulous in their adherence to the law."). Defendant admitted that he had attestation papers that, if completed, would have properly registered him with the state as a primary caregiver for "Brooks." Nevertheless, he failed to do so. In this regard, defendant was not an "otherwise law-abiding person," because, by his own admission, he failed to comply with the MMMA's requirements for establishing a primary caregiver relationship. Thus, Detective Johnson's actions merely provided defendant with an opportunity to commit a crime. *Vansickle*, 303 Mich App at 115.

The second part of the entrapment test requires us to consider whether "the police conduct is so reprehensible" that we will not tolerate it and "bar prosecution on the basis of that conduct alone . . . ." *Fabiano*, 192 Mich App at 531-532. This inquiry has been likened to a due process violation. *Id.* at 532. Specifically, "there is certain conduct by government that a civilized society simply will not tolerate, and the basic fairness that due process requires precludes continuation of the prosecution where the police have gone beyond the limit of acceptable conduct in ensnaring the defendant, without regard to causation." *Id.* at 532.

Here, Detective Johnson's conduct was not "so reprehensible" that it cannot be tolerated. *Id.* Defendant's argument makes much of the fact that "Brooks" had a registry identification card; however, his argument ignores the fact that he was never a connected primary caregiver for Brooks. The argument also assigns significance to a registry identification card that the MMMA plainly does not. As noted, the MMMA does not provide immunity or an affirmative defense simply because an individual possesses a registry identification card. Rather, both § 4 and § 8 require *more* than a registry identification card. Defendant did not make the requisite efforts to ensure that he complied with those additional requirements. Had he done so, he likely could have discovered that something was amiss with the fictitious "Brooks." We see nothing that would allow us to conclude that the trial court erred in holding that defendant did not establish entrapment based on any allegedly reprehensible conduct. Further, although Detective Johnson presented defendant with a false registry identification card, officers are permitted to employ deceptive methods to obtain evidence so long as their conduct does not manufacture criminal activity. *Vansickle*, 303 Mich App at 117. And, it is not for the courts "to judge if the scheme or plan employed was the best or most effective way to detect criminal behavior." *People v Jamieson*, 436 Mich 61, 82; 461NW2d 884 (1990) (opinion by BRICKLEY, J). Again, we conclude that Detective Johnson simply presented defendant with an opportunity to sell marijuana without following all of the steps required under the MMMA. Where defendant ignored those steps, we do not conclude that Detective Johnson's conduct was reprehensible. Indeed, by selling marijuana to "Brooks," defendant "*plainly assume[d] the risk* that the patient does not actually meet the elements" of § 8(a)(1). *Hartwick*, ___ Mich at ___, slip op at 36 (emphasis added).

In advocating for an entrapment defense, defendant contends that "the conduct that made [his] sale of marijuana illegal was in the control of the officer, and not [defendant]," and that he "reasonably and justifiably believed" his sales to Detective Johnson were protected under the MMMA. He also contends that if Detective Johnson had truly been a medical marijuana patient with an authentic card, he would have been able to avail himself of a § 8 affirmative defense. He

contends that this so-called deprivation of a § 8 defense violates due process. This argument misses the mark. Defendant minimizes his own actions, particularly his failure to make any attempt to complete the registration process for a primary caregiver. There is also no merit in defendant's attempt to blame the government for his inability to successfully assert the merits of a § 8 defense. As noted, he failed to present any evidence of the elements of a § 8 defense, much less *that he even took any steps to* verify the matters required for a valid § 8 defense. For instance, there was no evidence that defendant made any effort to inquire as to whether the amount of marijuana he and "Brooks" possessed was reasonably necessary for treatment. Rather, the evidence reveals that he simply sold "Brooks" some medical marijuana. In other words, after making sure that "Brooks" had a registry identification card, defendant ignored the rest of the MMMA.

Defendant next argues that he is entitled to dismissal because of entrapment by estoppel. This defense is similar to a traditional entrapment defense and is applied "[w]hen a citizen reasonably and in good faith relies on a government agent's representation that the conduct in question is legal." *Woods*, 241 Mich App at 548. The trial court found that defendant was unaware that Detective Johnson was a government agent during both transactions; thus, defendant could not have relied on a "government agent's representation" that his conduct was legal. See *id.* This finding is not clearly erroneous because the record reveals that defendant believed the individual to whom he provided marijuana was "Jason Brooks," a construction worker and medical marijuana patient. Nevertheless, defendant asks this Court to expand the entrapment by estoppel doctrine to include his reliance on the protections of the MMMA. Defendant provides no authority, however, that supports expanding this doctrine to include his reliance on a voter-initiated act, and he fails to identify any provision in the MMMA that would justify his belief that his conduct was legal. Moreover, his conduct in this case was clearly *not* legal, and there was never any type of affirmation—by "Brooks" or anyone or anything else— that his conduct was legal. Accordingly, the trial court did not clearly err in finding that defendant could not assert an entrapment by estoppel defense.

Finally, defendant argues that he was denied his right to present a defense and denied his Sixth Amendment right to cross-examine witnesses about medical marijuana. These arguments are entirely unsupported by legal authority, and defendant merely asserts his position with little explanation as to the basis for his claims. A defendant may not "merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Therefore, we need not consider these arguments on appeal.

Affirmed.


/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Michael F. Gadola


-12-